Filed 6/14/12

# IN THE SUPREME COURT OF CALIFORNIA

FRED TOMLINSON et al.,     )
     )
     Plaintiffs and Appellants,     )
     )     S188161
     v.     )
     )     Ct.App. 1/5 A125471
COUNTY OF ALAMEDA et al.,     )
     )     Alameda County
     Defendants and Respondents;  )
     )
Y.T. WONG et al.,     )
     )
     Real Parties in Interest and   )     Super. Ct. No. RG08396845
     Respondents.     )
_____)

     In this case, a developer applied to a county planning department for approval to build a housing subdivision. The department and the developer gave written notice to various agencies, to neighbors, and to interested parties. The notice described the proposed project, mentioned the department's determination that the project was categorically exempt from environmental law requirements, and solicited comments. After holding public hearings, the county determined that the proposed project was categorically exempt from compliance with environmental law requirements, and approved it.

1

The county's approval was then challenged in court.  At issue here is a statutory provision stating that a public agency's approval of a proposed project can be challenged in court only on grounds that were "presented to the public agency orally or in writing by any person during the public comment period . . . or prior to the close of the public hearing on the project before the issuance of the notice of determination."  (Pub. Resources Code, § 21177, subd. (a).)  Does this exhaustion-of-administrative-remedies provision apply to a public agency's decision that a project is categorically exempt from environmental law requirements?  We hold that it does.

## I

The California Environmental Quality Act (Pub. Resources Code, § 21000 et seq.)[1] (CEQA) and the regulations implementing it (Cal. Code Regs., tit. 14, § 15000 et seq.) embody California's strong public policy of protecting the environment.  "The basic purposes of CEQA are to:  [¶]  (1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities.  [¶]  (2) Identify ways that environmental damage can be avoided or significantly reduced.  [¶]  (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible.  [¶]  (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved."  (Cal. Code Regs., tit. 14, § 15002.)

---

[1]	Unless otherwise indicated, all further statutory references are to the Public Resources Code.

To achieve these goals, CEQA and the implementing regulations provide for a three-step process. In the first step, the public agency must determine whether the proposed development is a "project," that is, "an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment" undertaken, supported, or approved by a public agency. (§ 21065.)

The second step of the process is required if the proposed activity is a "project." The public agency must then decide whether it is exempt from compliance with CEQA under either a statutory exemption (§ 21080) or a categorical exemption set forth in the regulations (§ 21084, subd. (a); Cal. Code Regs., tit. 14, § 15300). A categorically exempt project is not subject to CEQA, and no further environmental review is required. (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380; *San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1373.) If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must "adopt a negative declaration to that effect." (§ 21080, subd. (c); see Cal. Code Regs., tit. 14, § 15070; *Muzzy Ranch Co. v. Solano County Airport Land Use Com.*, *supra*, at pp. 380-381.) Otherwise, the agency must proceed to the third step, which entails preparation of an environmental impact report before approval of the project. (§§ 21100, subd. (a), 21151, subd. (a).)

## II

In 2006, real parties in interest Y.T. Wong and SMI Construction, Inc. (hereafter collectively Wong), submitted an application to the Alameda County

3

Planning Department[2] to develop a single-family housing subdivision in the Fairview area, an unincorporated part of the county.  The application proposed to merge two parcels of land into one parcel of 1.89 acres, to subdivide the merged parcel into 11 lots, and to develop the lots with single-family homes.  The proposed subdivision was subject to two long-term development plans:  the General Plan for the Central Metropolitan, Eden, and Washington Planning Units of Alameda County, and the Fairview Area Specific Plan.  In April 2007, in response to concerns raised by various public agencies, Wong submitted a revised application.

On May 14, 2007, the planning department gave written notice of the proposed housing development to a number of agencies, neighbors, and interested parties.  The notice described the proposed project and solicited comments.  The notice also stated that the project was exempt from CEQA compliance "based on the site's existing conditions (developed as a low-density residential site with gently sloping land and minimal habitat value), and conformance to the existing zoning for the site (R-1, Fairview Area Specific Plan)."

On June 22, 2007, Wong mailed to neighbors of the proposed housing subdivision a notice of a public hearing set for July 2 to address a preliminary plan review by the planning commission.  Both the notice and the commission's preliminary plan review stated that the proposed development was exempt from CEQA compliance, "according to Article 19, Section 15332 In-fill Development Projects, as the proposed development would occur in an established urban area, [would] not significantly impact traffic, noise, air or water quality, and [could] be

---

[2]    The county's planning commission reviews and acts upon development applications.  The county's planning department assists and advises the commission.

served by required utilities and public services."[3]  (An in-fill project is one that, among other things, is "within city limits" on a "site of no more than five acres substantially surrounded by urban uses"  (Cal. Code Regs., tit. 14, § 15332).)[4]  The notice also advised:  "If you challenge the decision of the Commission in court, you may be limited to raising only those issues you or someone else raised at the public hearing described in this notice, or in written correspondence delivered to the Planning Commission at or prior to the public hearing."

At the July 2, 2007, hearing before the planning commission, residents in the area of the proposed housing subdivision expressed concerns about loss of views, incompatibility with the neighborhood, increased traffic, and insufficient parking.  Among those critics were Fred and D'Arcy Tomlinson, petitioners in this matter.  Fred Tomlinson suggested scaling down the proposed project.  The planning commission continued the matter to an unspecified date.  Thereafter, in an August e-mail message to the planning department and in a November letter to the planning department signed by more than 80 residents, petitioners expressed concerns about the proposed development.

---

[3]     The notices here at issue cite "Article 19, Section 15332" because section 15332 appears in article 19, of chapter 3, of division 6, of title 14 of the California Code of Regulations.  Article 19 sets forth categorical or regulatory exemptions to CEQA compliance.

[4]     The categorical or regulatory exemption for an in-fill development is defined in title 14, section 15332 of the California Code of Regulations.  The requirements are that:  "(a) The project is consistent with the applicable general plan designation and all applicable general plan policies as well as with applicable zoning designation and regulations.  [¶]  (b) The proposed development occurs *within city limits* on a project site of no more than five acres substantially surrounded by urban uses.  [¶]  (c) The project site has no value, as habitat for endangered, rare or threatened species.  [¶]  (d) Approval of the project would not result in any significant effects relating to traffic, noise, air quality, or water quality.  [¶]  (e) The site can be adequately served by all required utilities and public services."  (Italics added.)

On December 17, 2007, after hearing the residents' concerns, the planning commission, acting upon the recommendation of the planning department, approved the proposed housing subdivision, stating it was categorically exempt from CEQA compliance "pursuant to Section 15532 (Infill Development)." Petitioners appealed that decision to the Alameda County Board of Supervisors. After a public hearing on April 8, 2008, at which petitioners presented their concerns, the board denied the appeal, citing the planning department's determination that the proposed housing subdivision "was Categorically Exempt pursuant to Section 15332 (Infill Development)."

Petitioners then, without success, petitioned the Alameda County Superior Court for a writ of mandate to set aside the county's approval of the proposed housing development. Of the various violations asserted in the petition, the one relevant here is the claim that the in-fill categorical exemption to CEQA compliance, on which the county's approval was based, did not apply because the proposed project was in an unincorporated part of the county and therefore did not meet the exemption's requirement that the project be "within city limits." (See *ante*, fn. 4.) On this claim, the trial court ruled that petitioners had failed to exhaust their administrative remedies as required by section 21177, because "[n]either petitioners nor anyone else ever objected to the County's use of the exemption on the basis that the Project will not be built within city limits."

The Court of Appeal reversed. Relying on *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165 (*Azusa*), it concluded that section 21177's exhaustion-of-administrative-remedies requirement does not apply when the court challenge pertains to a public agency's decision that a proposed project is categorically exempt from CEQA compliance. The Court of Appeal disagreed with the decision to the contrary in *Hines v.*

6

*California Coastal Com.* (2010) 186 Cal.App.4th 830 (*Hines*). We granted review to resolve the conflict.

## III

Wong contends the Court of Appeal erred in holding that section 21177's exhaustion-of-administrative-remedies requirement does not apply to a public agency's decision that a project is categorically exempt from compliance with CEQA. We agree.

Subdivision (a) of section 21177 states that a court action alleging a public agency's failure to comply with CEQA may be brought only if "the alleged grounds for noncompliance with [CEQA] were presented to the public agency orally or in writing by any person during *the public comment period provided by this division or prior to the close of the public hearing on the project before the issuance of the notice of determination*." (Italics added.) Subdivision (e) of section 21177 states that the statute's exhaustion-of-administrative-remedies requirement "does not apply to any alleged grounds for noncompliance with [CEQA] for which there was no public hearing or other opportunity for members of the public to raise those objections orally or in writing prior to the approval of the project . . . ." As the above-italicized statutory language shows, application of subdivision (a)'s exhaustion-of-administrative-remedies provision requires either (1) a public comment period provided by CEQA (the public comment provision) or (2) an opportunity for public comment at public hearings before issuance of a notice of determination (the public hearing provision).

The Court of Appeal here relied on *Azusa*, *supra*, 52 Cal.App.4th at page 1210. In that case the court held that section 21177's "public comment" provision is inapplicable when, as occurred here, a public agency has determined that a project is categorically exempt from CEQA compliance. That provision, the Court of Appeal here noted, only comes into play if, in the words of the statute, a "public

7

comment period" has been "provided by" CEQA. (§ 21177, subd. (a).) As the court pointed out, CEQA does not provide for a public comment period preceding an agency's exemption determination. (See § 21092 [providing for public comment only as to negative declarations and environmental impact reports].) Therefore, the Court of Appeal concluded, the exhaustion provision's "public comment period" does not apply here. We agree.

The Court of Appeal then considered the exhaustion requirement's public hearing provision that no court action alleging a public agency's noncompliance with CEQA can be brought if the underlying grounds were not raised "before the issuance of the notice of determination" by the agency. (§ 21177, subd. (a).) That provision, the Court of Appeal concluded, does not apply when, as occurred here, the public agency determines that the project is categorically exempt from CEQA compliance. In that situation, the court said, no public hearing precedes the agency's notice of determination because such a notice "is never filed if the agency declares an exemption." In support, the Court of Appeal cited *Azusa*, *supra*, 52 Cal.App.4th at page 1210. We see a significant difference, however, between *Azusa* and this case. In *Azusa*, the public agency did not hold any public hearings preceding its decision that the proposed project was exempt from CEQA compliance. (*Id.* at p. 1211.) In contrast, here the public agency did hold public hearings that gave interested parties, including petitioners, the opportunity to raise objections or concerns to the proposed project *before* the agency's exemption finding. (See *Hines*, *supra*, 186 Cal.App.4th at p. 854 [§ 21177's subd. (a) exhaustion provision applies when there was ample notice of public hearing].)

We disagree with the Court of Appeal's conclusion that the public hearing provision in section 21177's subdivision (a) does not apply when, as here, no notice of determination is filed. *If* a notice of determination is filed, the public hearing provision requires a party wishing to challenge the project in court to raise

8

the party's objections to the project at a public hearing held before the notice of determination is filed. But if no such notice is filed, the public hearing provision nonetheless applies. In that situation, the challenging party is still required to exhaust its administrative remedies by presenting its objections to the project to the pertinent public agency, so long as it is given the opportunity to do so at a public hearing held *before the project is approved*. When, as in this case, a party is given such an opportunity, and it fails to raise a particular objection to the project, it may not raise that objection in court, because it has not satisfied the exhaustion requirement of section 21177's subdivision (a).

The absence of a notice of determination does not render improper the agency's approval of the proposed project based on an exemption finding. It only extends the time within which to initiate a lawsuit challenging the public agency's decision. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 501.) Under section 21177's subdivision (e) the exhaustion requirement's application is conditioned upon the holding of public hearings to present any objections to or concerns about the proposed project, thus confirming that what matters is the opportunity for comment at such public hearings, not the filing of a notice of determination.

For the reasons given above, we conclude that the exhaustion-of-administrative-remedies requirement set forth in subdivision (a) of section 21177 applies to a public agency's decision that a proposed project is categorically exempt from CEQA compliance as long as the public agency gives notice of the ground for its exemption determination, and that determination is preceded by public hearings at which members of the public had the opportunity to raise any concerns or objections to the proposed project. (Accord, *Hines*, *supra*, 186 Cal.App.4th at pp. 852-855.)

9

We perceive no conflict between our conclusion and the principles underlying the common law doctrine requiring exhaustion of administrative remedies before bringing a court action. We have described that doctrine as " 'a jurisdictional prerequisite to resort to the courts.' " (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd.* (2005) 35 Cal.4th 1072, 1080.) " ' "The basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief." [Citation.] Even where the administrative remedy may not resolve all issues or provide the precise relief requested by a plaintiff, the exhaustion doctrine is still viewed with favor "because it facilitates the development of a complete record that draws on administrative expertise and promotes judicial efficiency." [Citation.] It can serve as a preliminary administrative sifting process [citation], unearthing the relevant evidence and providing a record which the court may review.' " (*Sierra Club v. San Joaquin Local Agency Formation Com.* (1999) 21 Cal.4th 489, 501.)

In light of our conclusion on the legal issue presented — applicability of section 21177's exhaustion-of-administrative-remedies requirement to a public agency's decision that a project is categorically exempt from compliance with CEQA — we express no view on petitioners' remaining contentions that their objections at the public hearings were sufficient to satisfy the exhaustion requirement and that the public agency misled them.

### DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court so it can address petitioners' remaining contentions that,

10

although raised by petitioners, were not resolved by that court because of its conclusion that section 21177's exhaustion-of-administrative remedies requirement was inapplicable.

KENNARD, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

11

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Tomlinson v. County of Alameda

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 188 Cal.App.4th 1406
**Rehearing Granted**

_____

**Opinion No.** S188161
**Date Filed:** June 14, 2012

_____

**Court:** Superior
**County:** Alameda
**Judge:** Fran Roesch

_____

**Counsel:**

Remy, Thomas, Moose & Manley and Sabrina V. Teller for Plaintiffs and Appellants.

Law Office of Jewell Hargleroad and Jewell J. Hargleroad for the League of Women Votes of the Eden Area and Fairview Community Club as Amici Curiae on behalf of Plaintiffs and Appellants.

Law Offices of Stephan C. Volker, Stephen C. Volker, Joshua A. H. Harris and Shannon L. Chaney for North Coast Rivers Alliance, Desert Protection Society, California Sportfishing Protection Alliance and Klamath Forest Alliance as Amici Curiae on behalf of Plaintiffs and Appellants.

Richard E. Winnie, County Counsel, Brian E. Washington, Assistant County Counsel, and Manuel F. Martinez, Associate County Counsel, for Defendants and Respondents.

Abdalah Law Offices, Richard K. Abdalah and Miriam H. Wen-Lebron for Real Parties in Interest and Respondents.

Cox, Castle & Nicholson, Michael H. Zischke, Melanie Sengupta and Andrew B. Sabey for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Parties in Interest and Respondents.

Brownstein Hyatt Farber Schreck and Beth Collins-Burgard for California Building Industry Association as Amicus Curiae on behalf of Real Parties in Interest and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Sabrina V. Teller
Remy, Thomas, Moose & Manley
455 Capitol Mall, Suite 210
Sacramento, CA  95814
(916) 443-2745

Miriam H. Wen-Lebron
Abdalah Law Offices
10455 Torre Avenue
Cupertino, CA  95014
(408) 252-5211

Andrew B. Sabey
Cox, Castle & Nicholson
555 California Street, 10th Floor
San Francisco, CA  94104
(415) 392-4200