Filed 6/25/13; part. pub. order 7/25/13 (see end of opn.)

ORIGINAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

SAVE THE PLASTIC BAG COALITION,

     Plaintiff and Appellant,

v.

COUNTY OF MARIN et al.,

     Defendants and Respondents.

A133868

(Marin County
Super. Ct. No. CV1100996)

County of Marin (Marin County or the county) enacted an ordinance intended to encourage the use of reusable bags by banning single-use plastic bags and imposing a fee on single-use paper bags. The ordinance applies to roughly 40 retailers in unincorporated parts of the county. The county determined the ordinance was categorically exempt from the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) because it was a regulatory action designed to assure the maintenance, restoration, enhancement, or protection of natural resources and the environment.[1] Plaintiff Save the Plastic Bag Coalition (plaintiff) sought a writ of mandate directing the county to set aside its ordinance for failure to comply with CEQA. On appeal from a judgment denying the writ, plaintiff raises various arguments supporting its view that the challenged ordinance is not categorically exempt from CEQA. We affirm the judgment.

_____

[1] All further statutory references are to the Public Resources Code unless otherwise specified.

1

## FACTUAL AND PROCEDURAL BACKGROUND

The Marin County Board of Supervisors (board) enacted Ordinance No. 3553 (ordinance) in January 2011.  Effective January 1, 2012, the ordinance prohibits certain retail establishments from dispensing single-use plastic bags and requires retailers to impose a reasonable charge of not less than five cents for dispensing a single-use, recycled-content paper bag.[2]  (Marin County Code, tit. 5, § 5.46.020, subds. (a) & (b)(2)(D).)  Retail customers who participate in certain government-sponsored food programs are exempt from the charge for single-use paper bags.  (*Id.*, § 5.46.020, subd. (b)(2)(C).)  The ordinance applies only in unincorporated portions of the county.  (*Id.*, § 5.46.010, subd. (f).)  As a general matter, grocery stores, pharmacies, convenience food stores, and other stores that sell food or perishable items are subject to the ordinance, although restaurants and similar establishments that sell prepared foods are excluded from the law's scope.  (*Ibid.*)  The ordinance establishes the criteria for a bag to qualify as reusable and specifies that reusable bags may not contain lead or other heavy metals in toxic amounts.  (*Id.*, § 5.46.030.)  A store must make reusable bags available for purchase.  (*Id.*, § 5.46.020, subd. (b)(1).)

The county's effort to stem consumers' reliance on single-use bags began years before the county passed the ordinance.  In 2007, a Marin County task force identified plastic bags as a major solid waste issue.  The task force reported that plastic bags have no recycling markets, take 500 years to decompose, and pose a hazard to the environment.  In the period from 2007 through 2010, the county held meetings to formulate a strategy to address the use of single-use bags.  The "Marin Bag Ban Working Group" convened meetings in 2009 and 2010 to draft a local ordinance.  The working group included representatives from government, environmental organizations, retail stores, and suppliers of bags.

---

[2]  When we use the terms "plastic bag" and "paper bag" throughout this opinion, we intend to refer to single-use bags unless otherwise specified.

In December 2010, the county's agricultural commissioner sent the board an analysis of a proposed ordinance regulating the provision of single-use carryout bags. As set forth in the commissioner's report, single-use plastic and paper carryout bags have adverse environmental impacts throughout the state. Litter cleanup alone requires public agencies to spend substantial sums to dispose of discarded single-use bags. In addition, a substantial amount of private and public money is spent removing plastic and paper bags from recycling equipment, storm water systems, streets, sidewalks, and waterways, including the San Francisco Bay. According to the commissioner's analysis, the ordinance would apply to approximately 40 retail stores in unincorporated areas of Marin County. If a similar ordinance were to be adopted throughout the county by all incorporated cities and towns, the law would apply to a total of 440 retailers.

As set forth in the agricultural commissioner's analysis, county residents use up to 138 million single-use bags each year that end up in the waste stream. Bags are sometimes baled together and "sent to distant lands for handling—often to be burned or buried." According to one estimate, California residents pay up to $200 per household annually in taxes and fees to clean up waste associated with single-use bags. The agricultural commissioner stated the ordinance would provide an incentive for consumers to shift from single-use bags to reusable bags. According to the analysis, a shift to reusable bags would conserve resources, reduce the amount of greenhouse gas emissions associated with the production of single-use bags, reduce waste and marine pollution, protect water resources and water quality, and enhance the quality of life for county residents, visitors, and wildlife.

At the time the county was considering the ordinance, state law prohibited local jurisdictions from imposing a fee for single-use plastic bags. (See former § 42254, subd. (b)(2), as added by Stats. 2006, ch. 845, § 2.) In light of this constraint, and in order to encourage consumers to bring reusable bags with them to stores, the county proposed banning single-use plastic bags. To discourage consumers from simply switching from plastic to paper, the county also proposed imposing a fee for single-use paper bags. The agricultural commissioner's analysis recognized that, while paper bags are recycled at a

3

much higher rate than plastic bags, paper bags generate "significantly larger [greenhouse gas] emissions and result in greater atmospheric acidification, water consumption and ozone production than plastic bags." The analysis recited the experience in other parts of the nation and world supporting the conclusion that mandatory charges on single-use bags result in significant declines in the use and consumption of bags. Among other things, the commissioner relied on a master environmental assessment prepared by Green Cities California in which it was reported that a ban on single-use plastic bags combined with a five-cent charge for single-use paper bags in the District of Columbia had caused as many as two-thirds of consumers to shift from single-use to reusable bags. After the District of Columbia law went into effect, there was a 50 percent decrease in the number of plastic bags found during an annual cleanup of the Anacostia River watershed.

The agricultural commissioner concluded that "[b]y pursuing a ban on plastic with a mandatory charge on paper, the County can successfully rebut the plastic industry's challenge that simply banning plastic would shift people from one bad environmental impact (plastic) to another one (paper)." The commissioner also stated that the combination of the plastic bag ban with the charge on paper bags would allow the county to claim a categorical exemption under CEQA "by demonstrating and achieving a result that is environmentally superior: moving people to reusable bags and reducing waste from all single-use products." The analysis did not specify the statute, regulation, or other basis on which a categorical exemption might be claimed.

After conducting a first reading of the ordinance at a public meeting in December 2010, the board set the matter for a second reading in early January 2011, to be combined with a hearing on the merits of the ordinance. The county published notice of the hearing and allowed the public to send written comments to the board in advance of the hearing.

Plaintiff submitted a lengthy set of objections to the board expressing its opposition to the proposed ordinance, along with over 90 documents that were either cited in the objections or were purportedly supportive of plaintiff's position. Plaintiff describes itself as a coalition of companies involved in the manufacture or distribution of plastic bags. The purpose of the coalition is to respond to "environmental myths,

4

exaggerations, and misinformation about plastic bags." Fundamentally, plaintiff objected to the adoption of the proposed ordinance without the preparation or adoption of an environmental impact report (EIR). Plaintiff argued that banning plastic bags may have significant negative impacts on the environment because the alternatives—either paper bags or reusable bags—are worse for the environment. Among other things, plaintiff argued that banning plastic bags would not reduce the cost of litter collection, because there would still be a need to remove litter from streets, parks, and waterways even if there were no plastic bags in the litter stream. Plaintiff also stated that the plastic bag recycling rate had increased significantly since state law required stores to install plastic bag recycling bins. According to plaintiff, it is a "good thing" that plastic bags take many years to biodegrade, reasoning that alternatives such as paper bags emit significant amounts of greenhouse gases when they biodegrade in landfills. Additionally, Plaintiff disputed the claim that large numbers of seabirds and other sea animals are killed by plastic bags, and also challenged the assertion that there is a vast plastic garbage patch in the Pacific Ocean.

ORIGINAL

The thrust of plaintiff's objections focused on so-called "life cycle" assessments that evaluate the overall environmental impact of plastic bags compared to paper bags. Life cycle assessments evaluate the local and global environmental impacts of a product's manufacture and use from "cradle to grave"—i.e., from extraction of raw materials to final disposal of the product. For example, in the case of paper bag production and use, the assessments examine things such as forest decline, water consumed during production, atmospheric acidification from paper manufacturing, contribution to landfills, and generation of greenhouse gases. Plaintiff summarized four specific life cycle assessments that purportedly show paper bags are significantly more damaging to the environment than plastic bags. One such assessment concluded that papers bags have more adverse environmental impacts than plastic bags in that they use more energy and water, emit more greenhouse gases, produce more atmospheric acidification that results in acid rain, cause more ground level ozone to be formed, and generate more solid waste. Plaintiff also argued that the life cycle impacts of reusable bags are worse for the

5

environment than the life cycle impacts of plastic bags, contending that reusable bags consume more raw materials and will likely be discarded in a landfill long before they have been used enough times to offset their greater negative life cycle impacts.

Plaintiff disputed the agricultural commissioner's conclusion that a five-cent fee for paper bags would provide sufficient incentive to encourage consumers to switch to reusable bags. As for the District of Columbia's favorable experience with a five-cent fee for paper bags, plaintiff suggested the results there were influenced by a massive reusable bag giveaway program. Plaintiff further argued it was too soon to know with certainty the long-term impact of the District of Columbia law. Citing an EIR completed by Los Angeles County, plaintiff claimed the EIR established that a 10-cent fee for paper bags combined with a plastic bag ban would not be sufficient to prevent significant negative environmental impacts. Plaintiff did not provide the Los Angeles County EIR to the board but instead recited a web address at which the EIR could be accessed.

Observing that the agricultural commissioner had referred to a categorical exemption from CEQA, plaintiff noted it was "not clear" whether the county intended to rely on a categorical exemption. Plaintiff proceeded to address categorical exemptions for projects undertaken to protect a natural resource or the environment, arguing that the county could not rely on a categorical exemption because plaintiff had made "a fair argument that the proposed ordinance may cause significant environmental impacts."

The board continued the hearing on the merits of the ordinance until January 25, 2011, following the receipt of plaintiff's lengthy objections to the proposed legislation. In a letter to the board dated January 25, 2011, the county counsel's office recommended proceeding with the second reading of the ordinance and a public hearing on the merits of the proposed legislation. County counsel conducted its review of the matter at the request of the board in order to address plaintiff's contention that the county had failed to comply with CEQA. County counsel stated: "In our opinion, exempting the ordinance from CEQA review based upon the categorical exemptions contained in CEQA

6

Guidelines 15307 and 15308[3] (the so-called Class 7 and 8 exemptions), remains valid. There is substantial evidence to support your Board's conclusion the ordinance is a regulatory measure designed to protect both natural resources and the environment generally. Prohibiting the distribution of single use plastic carry-out bags at many retailers will undoubtedly have a positive environmental impact so long as customers do not merely shift from single-use plastic to single-use paper carry-out bags which also have adverse environmental impacts. And we believe the available evidence still shows that even at a 5 cent charge for paper bags, enough customers will convert to truly reuseable [sic] bags that the net effect of the ordinance will be to reduce the use of both plastic and paper single-use carry-out bags from their current levels in unincorporated Marin County."

Following the scheduled public hearing, the board adopted the ordinance. On March 2, 2011, the county filed a notice of exemption reflecting that the ordinance is exempt from CEQA under the categorical exemptions set forth in Guidelines sections 15307 and 15308.

Plaintiff filed a petition for a writ of mandate in the Marin County Superior Court, naming as respondents both the county and the Marin County Department of Agriculture, Weights & Measures. Plaintiff sought a peremptory writ of mandate directing the county to set aside the ordinance for failure to comply with CEQA. Plaintiff also sought a declaration that the ordinance is preempted by state law.

The trial court entered an order denying the writ of mandate and declaratory relief requested by plaintiff. The court found there is substantial evidence to support the county's action in relying on the categorical exemptions contained in Guidelines sections 15307 and 15308. The court noted: "While a clever lawyer can argue that it is a benefit

---

3 The regulations governing CEQA are found in title 14 of the California Code of Regulations. (Cal. Code Regs., tit. 14, § 15000 et seq.) Consistent with common usage, we hereafter refer to the regulations governing CEQA as the Guidelines. (*Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 319, fn. 4.)

7

that plastic bags take 500 years to decompose, it was reasonable for the County to conclude that it [is] more beneficial for the environment to avoid the litter and pollution from the plastic bag in the first instance, so that this indestructible trash is not added to the landfill at all."

Plaintiff appealed following entry of judgment in favor of the county. In its opening brief on appeal, plaintiff clarifies that the appeal is limited to the denial of the writ of mandate sought on the ground the county violated CEQA. Plaintiff does not appeal from the denial of declaratory relief concerning whether state law preempts the ordinance.

**DISCUSSION**

**1.** *CEQA Principles*

It is state policy in California that "the long-term protection of the environment . . . shall be the guiding criterion in public decisions." (§ 21001, subd. (d).) To achieve this goal, CEQA and the Guidelines implementing it provide for a three-step process. "In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency." (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 286.) In this case, Marin County concedes the ordinance qualifies as a project under CEQA.

If the proposed activity is determined to be a project, the public agency must proceed to the second step of the process, which considers whether the project "is exempt from compliance with CEQA under either a statutory exemption [citation] or a categorical exemption set forth in the regulations [citations]. A categorically exempt project is not subject to CEQA, and no further environmental review is required. If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an

8

environmental impact report before approval of the project." (*Tomlinson v. County of Alameda, supra,* 54 Cal.4th at p. 286.)

Because the ordinance here constitutes a legislative or quasi-legislative action, our inquiry on appeal extends only to whether the county prejudicially abused its discretion. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426.) An agency abuses its discretion when it "has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (§ 21168.5.) Our review is de novo in the sense that we perform the same function as the trial court in reviewing the administrative record for legal error and substantial evidence. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova, supra,* at p. 427.) We review the agency's action and not the decision of the trial court. (*Ibid.*)

In this case, the county determined the ordinance was categorically exempt from CEQA. Although our review is still governed by the general standards we have outlined, case law has clarified how these standards are applied in categorical exemption cases. "A categorical exemption is based on a finding by the Resources Agency that a class or category of projects does not have a significant effect on the environment. [Citations.] Thus an agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment. [Citation.] On review, an agency's categorical exemption determination will be affirmed if supported by substantial evidence that the project fell within the exempt category of projects." (*Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 115.)

"In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions listed in Guidelines section 15300.2. The most commonly raised exception is subdivision (c) of section 15300.2, which provides that an activity which would otherwise be categorically exempt is not exempt if there are 'unusual circumstances' which create a 'reasonable

9

possibility' that the activity will have a significant effect on the environment." (*Davidon Homes v. City of San Jose, supra,* 54 Cal.App.4th at p. 115.) As relevant here, the "cumulative impact" exception in subdivision (b) of Guidelines section 15300.2 provides that a public agency may not rely on a categorical exemption "when the cumulative impact of successive projects of the same type in the same place, over time is significant."

There is a split of authority on the appropriate standard of review to apply to a question of fact concerning whether an activity that would otherwise be categorically exempt is subject to one of the three main exceptions contained in subdivisions (a) through (c) of Guidelines section 15300.2. (1 Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 2013) § 5.127, pp. 298-302.) " 'Some courts have relied on cases involving review of a negative declaration, holding that a finding of categorical exemption cannot be sustained if there is a "fair argument" based on substantial evidence that the project will have significant environmental impacts, even where the agency is presented with substantial evidence to the contrary. [Citation.] Other courts apply an ordinary substantial evidence test . . . , deferring to the express or implied findings of the local agency that has found a categorical exemption applicable.' " (*Hines v. California Coastal Com.* (2010) 186 Cal.App.4th 830, 856.) As we explain, *post,* it is unnecessary for us to take a position on this split of authority because it would not alter the outcome of this appeal.

**2.    *Save the Plastic Bag Coalition v. City of Manhattan Beach***

At the outset, we consider plaintiff's contention that the outcome of this case is controlled by the California Supreme Court's decision in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155 (*Manhattan Beach*). Because the case addresses the appropriate level of environmental review under CEQA for a plastic bag ban, it is plainly relevant to our analysis. We also point out something obvious from the caption of the case—the plaintiff in *Manhattan Beach* is the same as the plaintiff here. However, *Manhattan Beach* involved an entirely different CEQA process from the one pursued by the county. In *Manhattan Beach,* the city conducted an initial study followed

by a negative declaration. (*Id.* at pp. 161-162.) By contrast, in this case Marin County determined the ordinance was exempt from CEQA and therefore did not proceed with an initial study. Nevertheless, even though *Manhattan Beach* focused on a CEQA process distinct from the one before us, the decision contains useful guidance in assessing plaintiff's claims that the ordinance will have significant environmental impacts.

In *Manhattan Beach,* the city proposed an ordinance banning the use of plastic bags at the point of sale. (*Manhattan Beach, supra,* 52 Cal.4th at p. 160.) The proposed ordinance included a finding that it was exempt from CEQA under the "common-sense" exemption (Guidelines, § 15061, subd. (b)(3)) and as a regulatory program designed to protect the environment (Guidelines, § 15308), the latter of which is one of the exemptions relied upon by the county in this case. (*Manhattan Beach, supra,* 52 Cal.4th at p. 160.) Just as the plaintiff did in this case, it threatened to sue the city unless it performed a full CEQA review. The city then conducted an initial study, which acknowledged that a switch from plastic to paper bags might have some negative environmental consequences but concluded the impacts would be less than significant. (*Ibid.*)

The initial study recited that the population of the city was 33,852, and that only 217 retail establishments would be affected by the plastic bag ban. (*Manhattan Beach, supra,* 52 Cal.4th at p. 161.) Although the proposed ordinance did not include a fee for paper bags, the study reached the conclusion that paper bags would not replace plastic bags on a one-to-one ratio because of the larger capacity of paper bags, and in any event some percentage of plastic bags would be replaced by reusable bags. (*Ibid.*) The study also noted that paper bags are recycled at a much higher rate than plastic bags, thus limiting the impact on landfill capacity. (*Id.* at p. 162.) The study recommended adopting a negative declaration finding the proposed ordinance would not have a significant effect on the environment. (*Ibid.*)

Plaintiff objected and relied on life cycle studies showing that paper bags have a greater environmental impact than plastic bags. (*Manhattan Beach, supra,* 52 Cal.4th at

11

p. 162.)  The city adopted a negative declaration and enacted the ordinance.  (*Id.* at p. 164.)  Plaintiff sued the city for failure to comply with CEQA and prepare an EIR.  (*Ibid.*)

The Supreme Court in *Manhattan Beach* considered whether plaintiff had established a "fair argument the project may have significant adverse effects," thus requiring the city to prepare an EIR.[4]  (*Manhattan Beach, supra,* 52 Cal.4th at p. 171.)  The court focused on the distinction between local impacts and impacts in areas outside the public agency's geographical boundaries.  (*Id.* at pp. 172-174.)  CEQA specifies that a public agency must consider any significant effect on the environment in the area affected by the project.[5]  Although the court stated that public agencies must consider effects a project will have beyond the boundaries of the project area, it clarified that CEQA does not require an exhaustive analysis "of all conceivable impacts a project may have in areas outside its geographical boundaries."  (*Id.* at p. 173.)  The court emphasized that broader environmental impacts without direct impact on the local agency's geographical area may be evaluated at a higher level of generality.  (*Id.* at pp. 173-174.)

In considering the local and broader impacts of the city's ban, the court stated that the "only strictly local impacts of the ban appear to be those related to the transportation of paper bags, and possibly their disposal."  (*Manhattan Beach, supra,* 52 Cal.4th at p. 173.)  The impacts in areas outside the city were "both indirect and difficult to predict."  (*Id.* at p. 174.)  The court held that the "city properly concluded that a ban on plastic bags in Manhattan Beach would have only a miniscule contributive effect on the broader environmental impacts detailed in the paper bag 'life cycle' studies relied on by plaintiff.  Given the size of the city's population (well under 40,000) and retail sector (under 220

---

[4]  The other issue before the Supreme Court was whether plaintiff had standing to sue.  (*Manhattan Beach, supra,* 52 Cal.4th at pp. 165-170.)  Here, the county concedes that plaintiff has standing.

[5]  Section 21151, subdivision (b) specifies that "any significant effect on the environment shall be limited to substantial, or potentially substantial, adverse changes in physical conditions which exist within the area as defined in Section 21060.5."  Section 21060.5, in turn, provides that " '[e]nvironment' means the physical conditions which exist within the area which will be affected by a proposed project, including land, air, water, minerals, flora, fauna, noise, objects of historic or aesthetic significance."

establishments, most of them small), the increase in paper bag production following a local change from plastic to paper bags can only be described as insubstantial." (*Ibid.*) The court concluded there was no substantial evidence to support a fair argument the plastic bag ordinance might significantly affect the environment, and consequently the city was not required to prepare an EIR. (*Id.* at p. 175.)

As relevant for our purposes, the court in *Manhattan Beach* focused on the "actual scale of the environmental impacts that might follow from increased paper bag use in Manhattan Beach, instead of comparing the global impacts of paper and plastic bags . . . ." (*Manhattan Beach, supra,* 52 Cal.4th at p. 172.) Further, while acknowledging that "CEQA review includes the impacts a project may have in areas outside the boundaries of the project itself," the court urged caution in considering broader and often uncertain impacts, stating: "[T]his case serves as a cautionary example of overreliance on generic studies of 'life cycle' impacts associated with a particular product. Such studies, when properly conducted, may well be a useful guide for the decision maker when a project entails substantial production or consumption of the product. When, however, increased use of the product is an indirect and uncertain consequence, and especially when the scale of the project is such that the increase is plainly insignificant, the product 'life cycle' must be kept in proper perspective and not allowed to swamp the evaluation of actual impacts attributable to the project at hand." (*Id.* at p. 175.) The court urged "common sense" in the CEQA domain, even when the "common sense" exemption (Guidelines, § 15061, subd. (b)(3)) is not specifically at issue. (*Manhattan Beach, supra,* at p. 175.) The court concluded by stating that "common sense leads us to the conclusion that the environmental impacts discernible from the 'life cycles' of plastic and paper bags are not significantly implicated by a plastic bag ban in Manhattan Beach." (*Ibid.*)

In light of our summary of the case, one might question why plaintiff would rely on *Manhattan Beach* or even suggest the analysis is supportive of its position. Plaintiff seizes upon two sentences in the opinion to argue that a governmental body larger than Manhattan Beach, such as Marin County, must prepare an EIR. First, plaintiff cites the

statement that "the analysis would be different for a ban on plastic bags by a larger governmental body, which might precipitate a significant increase in paper bag consumption." (*Manhattan Beach, supra,* 52 Cal.4th at p. 174.) Second, plaintiff relies on a footnote in which the court stated as follows: "While cumulative impacts should not be allowed to escape review when they arise from a series of small-scale projects, that prospect does not appear in this case. According to plaintiff, the movement to ban plastic bags is a broad one, active at levels of government where an appropriately comprehensive environmental review will be required." (*Id.* at p. 174, fn. 10.) From these isolated passages, plaintiff draws the conclusion that an EIR is required for any plastic bag ban in (1) a city or county larger than Manhattan Beach, and (2) in smaller cities and counties based on cumulative impacts. Plaintiff then claims the population of Marin County in 2010 was 252,409, over seven times larger than Manhattan Beach.

The passages in *Manhattan Beach* upon which plaintiff relies do not support a conclusion that Marin County abused its discretion by relying on a categorical exemption from CEQA. The court simply recognized that there may be circumstances when more comprehensive environmental review will be required if it can be shown that a plastic bag ban will result in a significant increase in paper bag use. That is simply not the case here. Marin County's ordinance applies to roughly 40 stores, compared to over 200 stores affected by Manhattan Beach's ordinance. If the broader impacts of increased paper bag use could be described as insubstantial in *Manhattan Beach*—where there was no charge for paper bags—it is even more trivial in this case, which involves significantly fewer retailers, each of whom will charge fees for papers bags and thereby increase the incentive for consumers to bring reusable bags when shopping. Further, because our review of the facts is limited to the record before the public agency, we may not properly consider the population of Marin County, which is not part of the administrative record. (See *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 977.) In any event, the relevant population figure for purposes of comparison is the population of the unincorporated areas of the county, where the ordinance applies. Given that the number of affected stores in unincorporated areas is substantially less than the number of

stores that would be affected if the ordinance were applied county-wide (40 as compared to 440), it is also reasonable to assume the population in unincorporated areas is substantially less than the overall population of the county. Thus, the analysis in *Manhattan Beach* does not compel the conclusion that Marin County was required to perform a more comprehensive CEQA review. If anything, a comparative analysis involving stores and population figures in Manhattan Beach and the unincorporated parts of Marin County reinforces the conclusion that, just as in *Manhattan Beach,* the environmental impacts of the ordinance are insignificant.

Plaintiff also argues that the county's reliance on a categorical exemption flies in the face of *Manhattan Beach.* Citing the California Natural Resource Agency's website, plaintiff contends that categorical exemptions apply only to *types* of projects from which the Legislature has provided a *blanket* exemption from CEQA. According to plaintiff, if comprehensive environmental review "will be required" for some plastic bag bans (*Manhattan Beach, supra,* 52 Cal.4th at p. 174, fn. 10), then it cannot be the case that there is a blanket exemption for plastic bag bans.

The holding and analysis in *Manhattan Beach* does not preclude a public agency from relying on a categorical exemption for a plastic bag ban. The authority plaintiff cites for the proposition that categorical exemptions are "blanket" exemptions actually refers to *statutory* exemptions. There is a critical difference between statutory and categorical exemptions. "[S]tatutory exemptions are absolute, which is to say that the exemption applies if the project fits within its terms. Categorical exemptions, on the other hand, are subject to exceptions that defeat the use of the exemption and the agency considers the possible application of an exception in the exemption determination." (*Great Oaks Water Co. v. Santa Clara Valley Water Dist.* (2009) 170 Cal.App.4th 956, 966, fn. 8; see also 1 Kostka & Zischke, Practice under the Cal. Environmental Quality Act, *supra,* § 5.3, pp. 194-195.)

We do not suggest there is a blanket exemption from CEQA for plastic bag bans. A categorical exemption *may* apply to plastic bag bans depending upon the unique facts and circumstances presented. Nothing in *Manhattan Beach* precludes such a result.

15

Indeed, the court in *Manhattan Beach* stated that an alternative to conducting an initial study would have been to determine the project is exempt from CEQA, an alternative that Manhattan Beach abandoned when threatened with litigation. (*Manhattan Beach, supra,* 52 Cal.4th at p. 171, fn. 8.) If the Supreme Court had intended to preclude public agencies from relying on a categorical exemption from CEQA when considering plastic bag bans, it would not have suggested the exemption process as an alternative to conducting an initial study.

**3.    *County as a Regulatory Agency for Purposes of Categorical Exemptions***

Plaintiff argues that the categorical exemptions relied upon by the county are inapplicable because they only apply to regulatory agencies implementing regulations authorized by a preexisting state law or ordinance.

Before considering the merits of plaintiff's contention, we first address the county's argument that plaintiff failed to exhaust its administrative remedies with respect to this contention. There appears to be no dispute that plaintiff failed to raise this argument in its lengthy objections submitted to the board. The question is whether the exhaustion-of-administrative-remedies requirement applies under the circumstances presented here.

The Supreme Court addressed the applicability of the requirement to categorical exemption cases in *Tomlinson v. County of Alameda, supra,* 54 Cal.4th 281. The court held "that the exhaustion-of-administrative-remedies requirement set forth in subdivision (a) of section 21177 applies to a public agency's decision that a proposed project is categorically exempt from CEQA compliance *as long as the public agency gives notice of the ground for its exemption determination*, and that determination is preceded by public hearings at which members of the public had the opportunity to raise any concerns or objections to the proposed project." (*Id.* at p. 291, italics added.)

Here, the county's agricultural commissioner indicated it would be appropriate to seek a categorical exemption based upon the fact the result of the ordinance is "environmentally superior." The commissioner's analysis did not specify the regulatory or other basis upon which a categorical exemption might be claimed. It was not until the

16

day of the continued public hearing that county counsel identified the basis for the claimed exemptions—sections 15307 and 15308 of the Guidelines. This belated identification of the grounds for the exemption does not qualify as adequate notice sufficient to permit interested parties to meaningfully address the basis for the exemptions. Even assuming this belated notice would suffice for purposes of requiring a member of the public to exhaust administrative remedies, it is unclear whether county counsel's letter was even made public before the hearing. Furthermore, it is irrelevant that plaintiff actually referred to the two exemptions relied upon by the county in its objections. Plaintiff could not be expected to raise all possible arguments concerning the applicability of a categorical exemption when it was unclear which exemption the county intended to claim. Thus, we conclude plaintiff was not required to exhaust administrative remedies with respect to this contention.

Turning to the merits of plaintiff's argument, the contention is based on the language of the exemptions in sections 15307 and 15308 of the Guidelines (referred to as "Class 7" and "Class 8" exemptions), which establish an exemption from CEQA for "actions taken by regulatory agencies as authorized by state law or local ordinance" either "to assure the maintenance, restoration, or enhancement of a natural resource" in the case of a Class 7 exemption or "to assure the maintenance, restoration, enhancement, or protection of the environment" in the case of a Class 8 exemption.[6]

---

[6] Guidelines section 15307 provides: "Class 7 consists of actions taken by regulatory agencies as authorized by state law or local ordinance to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment. Examples include but are not limited to wildlife preservation activities of the State Department of Fish and Game. Construction activities are not included in this exemption."

Guidelines section 15308 provides: "Class 8 consists of actions taken by regulatory agencies, as authorized by state or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the regulatory process involves procedures for protection of the environment. Construction activities and relaxation of standards allowing environmental degradation are not included in this exemption."

17

Plaintiff relies upon the general rule that "[e]xemption categories are not to be expanded beyond the reasonable scope of their statutory language." (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 125.) Without citation to authority, plaintiff claims that the Class 7 and 8 exemptions are based on a "three-level hierarchy" divided between legislative, regulatory, and ministerial actions. Plaintiff then argues, again without citation to authority, that legislative actions, such as the enactment of the ordinance, are never exempt from CEQA under the Class 7 and 8 exemptions, which apply only to regulatory agencies. In reliance on *Magan v. County of Kings* (2002) 105 Cal.App.4th 468 (*Magan*), plaintiff argues that the purpose of the regulatory exemptions is to avoid the need for regulatory agencies to repeat environmental review that has already been done at the legislative level.

We are aware of no support for plaintiff's claimed distinction between legislative and regulatory actions in the context of exemptions from CEQA. There is, however, a distinction between ministerial actions and discretionary actions. Ministerial actions of public agencies are exempt from CEQA. (Guidelines, § 15060, subd. (c)(1).) Discretionary actions by public agencies *may* be subject to CEQA. (*Ibid.*) The county readily concedes that enactment of the ordinance involved the "exercise of discretionary powers by a public agency." (*Ibid.*) Although ordinances are always "legislative" in character, they also may constitute "regulations." The authority for counties to enact regulations is provided in section 7 of article 11 of the California Constitution: "A county or city may make or enforce within its limits all local police, sanitary, and other ordinances and *regulations* not in conflict with general laws." (Italics added.)

Plaintiff's reliance on *Magan* is puzzling because the case does not support its position. In *Magan,* the Kings County Board of Supervisors enacted an ordinance regulating the application of sewage sludge to agricultural property. (*Magan, supra,* 105 Cal.App.4th at p. 470.) In setting limits on what types and quantities of sewage sludge could be applied to agricultural property, the ordinance relied on sewage sludge classifications established by federal regulation. (*Id.* at pp. 471-472.) The county determined the ordinance was categorically exempt from CEQA as "an action taken by a

18

regulatory agency for the protection of the environment" under Guidelines section 15308. (*Magan, supra,* at p. 472.)  The county's notice of exemption referred to the regulatory powers granted to the county.  (*Ibid.*)  The appellate court upheld the categorical exemption without considering whether the county was a "regulatory agency" within the meaning of section 15308 of the Guidelines.  (*Id.* at p. 477.)

Just as in *Magan,* the county here exercised the regulatory powers afforded to it by the California Constitution.  The ordinance constitutes a regulation enacted for the purpose of protecting natural resources and the environment.  It is immaterial that Kings County referred to certain federal regulations in its ordinance for purposes of defining which limitations applied to which types of sewage sludge.  The classifications established by federal regulation did not empower the county to enact the ordinance. Rather, they were simply convenient classifications to clarify how the county's ordinance was to be applied.  In one instance, Kings County recognized that it could not prohibit the application of a certain type of sewage sludge because federal law was to the contrary. (*Magan, supra,* 105 Cal.App.4th at p. 471.)  That fact does not support a conclusion that Kings County's authority to implement regulations derived from a specific authorization by the federal government.  The situation is no different here, where the county was constrained from imposing a fee for plastic bags because state law prohibited it. Although the county was bound by the prohibition, the state law prohibiting fees on plastic bags was not the source of the county's authority to enact the ordinance.

Plaintiff contends the county is trying to create an enormous loophole in CEQA by allowing cities and counties to adopt ordinances they deem to be "green" or "environmentally protective" without conducting any form of CEQA analysis.  We disagree.  In order to support a categorical exemption under CEQA, a public agency must be able to marshal substantial evidence to support the conclusion that the project fell within the exemption.  (*Davidon Homes v. City of San Jose, supra,* 54 Cal.App.4th at p. 115.)  Even if a public agency meets its initial burden to show the exemption is supported by substantial evidence, it still has to defend against claims that the exemption is subject to an exception.  (*Ibid.*)  Thus, it is simply not the case that a city or county can

19

circumvent CEQA merely by characterizing its ordinances as environmentally friendly and therefore exempt under the Class 7 or 8 categorical exemptions.

It is particularly telling that plaintiff's briefs appear to lack any mention of whether the county satisfied its initial burden to establish that the claimed exemptions are supported by substantial evidence in the record. We agree with the county's observation that "at no point has [plaintiff] attempted to argue that a regulation limiting the distribution of single-use bags and plastic bags, and encouraging the use of re-usable [sic] bags would not constitute an action to help 'assure the maintenance, restoration, enhancement, or protection of the environment.' " As the county points out, plaintiff argues that plastic bags are not as pernicious as sometimes claimed but does not dispute the fundamental point that the environment would be enhanced without plastic and paper bag waste. Because plaintiff has not directly addressed the issue of whether there is substantial evidence to support the Class 7 and 8 exemptions (before considering the exceptions to the exemptions), we will consider the issue forfeited. In any event, we agree with the trial court that the administrative record contains substantial evidence to support the conclusion that the ordinance is an action that will maintain, enhance, and protect natural resources as well as the environment generally.

**4.**     ***Paper Bag Fee:  Mitigation Measure or Part of Project Design?***

Plaintiff next contends the county may not consider the five-cent paper bag fee for purposes of determining whether Class 7 and 8 categorical exemptions apply. Plaintiff relies on the principle that public agencies cannot rely on mitigation measures to qualify for a categorical exemption. (See *Salmon Protection and Watershed Network v. County of Marin* (2004) 125 Cal.App.4th 1098, 1107-1108; *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1200.)

We agree with the county that plaintiff failed to exhaust administrative remedies with respect to this contention. Plaintiff did not raise the issue in the set of objections submitted to the county when the ordinance was under consideration. The argument does not depend upon the specification of the categorical exemption relied upon by the county, and the county's agricultural commissioner stated that the ordinance was categorically

20

exempt from CEQA.  Further, the five-cent paper bag fee was plainly part of the proposed ordinance and encompassed within the agricultural commissioner's analysis of the ordinance's effects.  Plaintiff had an opportunity to address the issue but did not.  Under these circumstances, the claim is barred as a result of the failure to exhaust administrative remedies.  (*Hines v. California Coastal Com., supra,* 186 Cal.App.4th at p. 855.)

Even if were to conclude the claim is not barred, we would still reject it.  In the cases relied upon by plaintiff, the lead agency *added* measures to a project to bring it within the ambit of a categorical exemption.  (*Salmon Protection and Watershed Network v. County of Marin, supra,* 125 Cal.App.4th at p. 1107; *Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster, supra,* 52 Cal.App.4th at p. 1199.)  Here, the county did not add mitigation measures to a preexisting project in order to fit within a categorical exemption.  Rather, the ordinance is and always has been an effort to wean consumers off of both types of single-use bags.  The paper bag fee was "*part* of the project design—it was never a *proposed* mitigation measure."  (*Wollmer v. City of Berkeley* (2011) 193 Cal.App.4th 1329, 1353.)

**5.**     ***Unusual Circumstances Exception***

Plaintiff claims the categorical exemptions relied upon by the county are inapplicable because there are "unusual circumstances" in this case.  The unusual circumstances exception provides:  "A categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances."  (Guidelines, § 15300.2, subd. (c).)

As noted previously, there is a split of authority regarding the standard of review governing a factual question as to whether the unusual circumstances exception applies.  (1 Kostka and Zischke, Practice under the Cal. Environmental Quality Act, *supra*, § 5.127, pp. 298-301.)  We need not resolve the conflict because we conclude that plaintiff's claim fails even under the fair argument standard, which affords less deference to the agency's determination than the ordinary substantial evidence test that some courts

21

employ. (*Hines v. California Coastal Com., supra,* 186 Cal.App.4th at p. 856.) Under the fair argument standard, " 'a finding of categorical exemption cannot be sustained if there is a "fair argument" based on substantial evidence that the project will have significant environmental impacts, even where the agency is presented with substantial evidence to the contrary.' " (*Ibid.*)

Plaintiff states it has produced substantial evidence that paper and reusable bags may cause significant negative environmental impacts. We disagree. In the section of its opening brief addressed to this argument, the only specific impact plaintiff identifies is that the ordinance "may have the unintended . . . effect [of] significantly increasing greenhouse gas emissions."

The evidence relied upon by plaintiff in this case is remarkably similar to the evidence relied upon by plaintiff in *Manhattan Beach.* Here, just as in *Manhattan Beach,* plaintiff's primary argument is that life cycle studies establish that paper bags are more detrimental for the environment than plastic bags. The impacts plaintiff identifies are indirect and primarily occur beyond the geographical area of the county. Indeed, plaintiff devotes just one small section of its opening brief to "local impacts," in which plaintiff lists a series of questions or issues it feels should be addressed by the county before adopting the ordinance. These issues include, among others: "Whether the county has a landfill that would be impacted by any increased paper bag use"; "How trash is disposed of in the county"; and "What would be the likely impact of a campaign urging recycling and reusable bag use."

The issues and questions raised by plaintiff do not constitute substantial evidence of a significant, local environmental impact. In *Magan, supra,* 105 Cal.App.4th at pp. 476-477, the party challenging the ordinance raised a number of concerns about the sewage sludge regulation, including that it would degrade agricultural land. The challenger failed to produce any evidence to support its claims. (*Id.* at p. 477.) The court concluded there was no substantial evidence to support an exception to the Class 8 exemption, reasoning that the challenger's " 'speculative concerns are too vague and

22

imprecise for any meaningful environmental assessment.' " (*Ibid.*) The same is true here, where plaintiff simply raises questions it is unable to answer.

In *Manhattan Beach,* the court stated that the "only strictly local impacts of the [plastic bag] ban appear to be those related to the transportation of paper bags, and possibly their disposal." (*Manhattan Beach, supra,* 52 Cal.4th at p. 173.) The court determined the local impacts were minimal. (*Ibid.*) Here, in the absence of any evidence to the contrary, we likewise conclude that any local effects from a possible increase in paper bag use at 40 retailers would be insignificant. Even if we were to accept plaintiff's argument that a five-cent paper bag fee is insufficient to deter some portion of consumers from switching from plastic bags to paper bags, the overall impact on local landfills and transportation networks would still be insubstantial.

As for the broader, global impacts that might follow from increased paper bag use at the 40 retailers affected by the ordinance, it is plain that any increased greenhouse gas emissions or similar, broader environmental consequences resulting from the ordinance would be comparatively trivial.[7] For many of the same reasons expressed in *Manhattan Beach,* we conclude plaintiff has not put forth a fair argument based on substantial evidence that the ordinance will have significant environmental impacts.

**6.      *Cumulative Effects Exception***

Because the county's ordinance is intended as a model for the incorporated cities and towns in the county, plaintiff contends the county's environmental review should have taken into account the law's cumulative impact as if it were adopted throughout the county. As support for its cumulative impact argument, plaintiff relies on sections of the Guidelines that apply when a public agency conducts an initial study. (See Guidelines,

_____

[7] As set forth in section 21084, subdivision (b), a project's greenhouse gas emissions cannot defeat a categorical exemption if the project complies with applicable regulations to implement state, regional, or local greenhouse gas reduction plans. In the absence of such a local or regional plan, "it appears that this provision bars any claim that [greenhouse gas] emissions defeat the use of a categorical exemption. (1 Kostka & Zischke, Practice under the Cal. Environmental Quality Act, *supra,* § 5.72, p. 248.3.) The legislation adding current subdivision (b) to section 21084 was adopted after the county approved the ordinance. (Stats. 2011, ch. 469, § 5.)

§§ 15065, subd. (a)(3).) However, for purposes of a categorical exemption, the relevant exception is found in Guidelines section 15300.2, subdivision (b), which provides that a public agency may not rely on a categorical exemption "when the cumulative impact of successive projects of the same type in the same place, over time is significant." Appellant has not produced substantial evidence to support a fair argument that the cumulative impacts would be significant.

" 'When there is no substantial evidence of any individual potentially significant effect by a project under review, the lead agency may reasonably conclude the effects of the project will not be cumulatively considerable . . . .' " (*Hines v. California Coastal Com., supra,* 186 Cal.App.4th at p. 857.) In this case, there is no substantial evidence that any individual effects of the ordinance will be significant. There is no reason to believe the cumulative impacts of the law, even if it were to be adopted by all cities and towns in the county, would be significant. Our conclusion is compelled by plaintiff's utter failure to offer evidence of uniquely local impacts resulting from the ordinance. Greenhouse gas emissions are a global concern. The effect on such emissions caused by a theoretical increase in paper bag use is relatively trivial regardless of whether the ordinance applies to 40 stores in unincorporated areas of the county or all 440 stores that would be affected if the ordinance were applied throughout the county.

## 7. *Purported Procedural Errors in Claiming Categorical Exemption*

Finally, plaintiff asserts the county cannot rely on categorical exemptions from CEQA because (1) the county failed to make written findings supporting the categorical exemptions, and (2) the county did not assert the exemptions until it was too late. Plaintiff is wrong on both counts.

An agency is not required to make a written determination supporting the conclusion a project is categorically exempt. (*Robinson v. City and County of San Francisco* (2012) 208 Cal.App.4th 950, 961; see also 1 Kostka & Zischke, Practice under the Cal. Environmental Quality Act, *supra,* § 5.115, p. 287.) As for plaintiff's claim that the county did not assert the exemptions until after approval of the ordinance, the contention appears to be based on the fact the notice of exemption bears a date of

24

February 3, 2011, nine days after the county approved the ordinance.  However, the notice of exemption also bears a handwritten date signifying that the exemptions were "approved" on the date the board adopted the ordinance.  In addition, the minutes of the board meeting at which the ordinance was adopted reflect that deputy county counsel confirmed the validity of the claimed categorical exemptions, as counsel had done in an earlier letter directed to the board.  Thus, as a factual matter, plaintiff's contention that the board did not assert the exemptions until after it approved the ordinance is incorrect.

At oral argument on appeal, plaintiff's counsel contended that Marin County failed to follow its own guidelines for claiming a categorical exemption.  Plaintiff first made this argument in its reply brief on appeal.  Plaintiff also first addressed in its reply brief the handwriting on the notice of exemption that refers to an approval, suggesting that the notation must have referred to approval of the ordinance and not approval of the exemption.  As a general matter, we decline to consider contentions raised for the first time in a reply brief.  "Obvious considerations of fairness in argument demand that the appellant present all of his or her points in the opening brief.  To withhold a point until the closing brief would deprive the respondent of an opportunity to answer it or require the effort and delay of an additional brief by permission."  (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 723, p. 790; see also *Granite Construction Co. v. American Motorists Ins. Co.* (1994) 29 Cal.App.4th 658, 667, fn. 8.)

In any event, plaintiff's belated arguments lack merit.  Even if the county did not comply with certain aspects of its own guidelines for asserting a categorical exemption, plaintiff has failed to explain how any such noncompliance with the county's own guidelines constitutes a CEQA violation.  "CEQA does not require public agencies to follow any specific procedure in approving activities that are exempt."  (1 Kostka & Zischke, Practice under the Cal. Environmental Quality Act, *supra,* § 5.114, p. 285.)  Further, when a project is categorically exempt from CEQA, "a project's approval cannot be challenged on the ground that the agency's exemption determination was documented after the project was approved."  (*Ibid.*; see also *Robinson v. City and County of San Francisco, supra,* 208 Cal.App.4th at pp. 960-963 [fact that planning department did not

25

certify categorical exemption until after permit issued was not a ground to invalidate permit].)

## DISPOSITION

The judgment is affirmed.  Respondents shall recover their costs on appeal.


 

_____

McGuiness, P. J.


We concur:


_____

Siggins, J.


_____     ORIGINAL

Jenkins, J.

ORIGINAL

**CERTIFIED FOR PARTIAL PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| SAVE THE PLASTIC BAG COALITION, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF MARIN et al., <br><br>     Defendants and Respondents. | A133868 <br><br> (Marin County <br> Super. Ct. No. CIV1100996) <br><br> ORDER CERTIFYING OPINION <br> FOR PARTIAL PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on June 25, 2013, was not certified for publication in the Official Reports. Upon due consideration, the requests to publish the opinion, filed on July 8 and 15, 2013, are granted in part. Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, the opinion is certified for publication with the exception of parts four, five, six, and seven of the Discussion.

Dated: _____          _____

                                    McGUINESS, P.J.

Trial Court:                              Marin County Superior Court


Trial Judge:                             Hon. Lynn Duryee


Counsel for Plaintiff and Appellant:      Stephen L. Joseph


Counsel for Defendants and Respondents:   Patrick K. Faulkner
                                              County Counsel (Marin)
                                          David L. Zaltsman
                                              Deputy County Counsel


Counsel for Californians Against Waste
as Amicus Curiae on behalf of Defendants
and Respondents:                          Rachel Z. Vida


ORIGINAL


*Save the Plastic Bag Coalition v. County of Marin et al.*,  A133868


2