[No. A105592. First Dist., Div. Four. Dec. 16, 2004.]

SALMON PROTECTION AND WATERSHED NETWORK et al., Plaintiffs and Respondents, v.
THE COUNTY OF MARIN et al., Defendants;
JOSHUA HEDLUND, Real Party in Interest and Appellant.

**COUNSEL**

Neil Sorensen; Stoel Rives and Anne Evelyn Mudge for Real Party in Interest and Appellant.

Michael Ward Graf for Plaintiff and Respondents.

OPINION

**SEPULVEDA, J.**—The County of Marin (the County) approved appellant Joshua Hedlund's construction of a house within a riparian area designated by the County as an environmental resource of critical concern. In approving the project, the County concluded that the project was categorically exempt from review under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21050 et seq.) because it entailed construction of a single-family residence. (Cal. Code Regs., tit. 14, § 15303, subd. (a).) The County did not make express findings on the specific regulatory exception prohibiting categorical exemption for projects that "may impact on an environmental resource of . . . critical concern," but found generally that any adverse environmental impacts were eliminated by mitigation measures adopted as conditions for project approval. (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).)

The trial court issued a writ of mandate commanding the County to set aside its approval of the project. The trial court found that the County erred in relying upon mitigation measures to grant a categorical exemption from CEQA. We affirm the lower court's order. Only those projects having no significant effect on the environment are categorically exempt from CEQA review. (Pub. Resources Code, §§ 21080, subd. (b)(9), 21084, subd. (a).) If a project may have a significant effect on the environment, CEQA review must occur and only then are mitigation measures relevant. (*Azusa Land Reclamation Co. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165, 1199–1200 [61 Cal.Rptr.2d 447] (*Azusa*).) Mitigation measures may support a negative declaration but not a categorical exemption. (*Ibid.*)

## FACTS

The County general plan governing land use recognizes riparian systems as "irreplaceable" and valuable for water quality, fish and wildlife, recreation, aesthetics, erosion control, and human health. To protect riparian systems, the general plan designates natural watercourses and adjacent riparian habitat as stream conservation areas. Protective polices for stream conservation areas are implemented through the County's permit review process and adoption of specific ordinances.

One such ordinance requires discretionary review of any development adjacent to anadromous fish streams, even construction of single-family

homes. Anadromous fish, like salmon, migrate upriver from the sea to breed in fresh water. In adopting the ordinance, the County Board of Supervisors found that a discretionary permit process was necessary to protect riparian habitats and their threatened coho salmon and steelhead trout populations from unconstrained development. The ordinance was in response to studies finding that there were approximately 160 undeveloped riparian lots that were conventionally zoned and thus capable of receiving ministerial building permits without review to ensure environmental protection. Almost all of these undeveloped riparian lots are in the San Geronimo Valley, where the majority of the County's coho salmon and steelhead trout spawn. Appellant Hedlund's property is one of these undeveloped lots along San Geronimo Creek, and it was his request for a building permit that prompted a County agency to initiate the zoning amendment that now mandates discretionary review of development in sensitive riparian areas.

In June 2002, Hedlund submitted a design review application to the County for permission to build a four-bedroom house of 3,649 square feet, with a garage of 768 square feet, on a 7.26-acre parcel abutting San Geronimo Creek and within a designated stream conservation area. The house would be within 40 feet of the creek's bank, and the creek setback for the parking area would be just 20 feet. Respondents Salmon Protection and Watershed Network (SPAWN) and Tomales Bay Association (collectively, SPAWN), among others, objected to the proposed development.

The County Community Development Agency (CDA) approved the project in October 2002, subject to conditions meant to minimize "adverse physical effects on the natural environment." The conditions included detailed construction limitations and incorporation of a riparian protection plan prepared by an engineering firm. The riparian protection plan acknowledged that runoff from new rooftops and driveways can erode stream banks, and proposed drainage features for erosion and sediment control. The CDA concluded that the project was categorically exempt from CEQA because it entailed construction of a single-family residence with no potentially significant impacts on the environment.

In March 2003, the County Planning Commission likewise approved the project, over SPAWN's objections, after imposing additional mitigation measures. The Planning Commission found that the project "as conditioned incorporates numerous provisions reducing to insignificance the possibility that the project would harm coho salmon or steelhead trout." SPAWN appealed the project approval to the County Board of Supervisors, which rejected

the appeal in April 2003. The Board of Supervisors affirmed the project's exemption from CEQA as a single-family residence without adverse environmental impacts. The board observed that one constraint upon development of the site was potential "adverse impacts on the habitat of threatened or endangered species," but found that "[p]ossible disharmonies with the creek have been adequately addressed" by the riparian protection plan and other conditions of approval. The board found that the project, *as conditioned and mitigated,* would not have significant adverse environmental effects.

On May 7, 2003, SPAWN filed a petition for a writ of mandate to compel the County to set aside its approval of the Hedlund project. SPAWN alleged, among other things, that environmental review of the project was required under CEQA. The trial court denied SPAWN's request for a preliminary injunction to stop construction, and SPAWN petitioned this Court to reverse the trial court's order.

On October 9, 2003, we denied SPAWN's writ petition but directed the trial court's attention to two issues for its consideration at the hearing on the merits. We observed that the Hedlund project appears to be in a County-designated area of "critical concern," thus implicating an exception to categorical exemption from CEQA. (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).) We also questioned whether the categorical exemption finding, which considered potential environmental impacts, was made without reference to proposed mitigation measures. (*Azusa, supra,* 52 Cal.App.4th at pp. 1199–1201.)

Following a hearing on the merits, the trial court granted SPAWN's petition for a writ of mandate and issued an order commanding the County to set aside its approval of the Hedlund project. The court found that the County "erred procedurally and substantively" in finding the project categorically exempt from CEQA review. The project was within a stream conservation area and had the potential to impact a County-designated environmental resource of critical concern, thus disentitling the project to CEQA exemption. (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).) The County erred, the trial court concluded, in finding that Hedlund was nevertheless entitled to a categorical exemption because the project's adverse impacts could be mitigated. The trial court noted that eligibility for a categorical exemption must be determined without reference to mitigation measures. (*Azusa, supra,* 52 Cal.App.4th at pp. 1199–1200.) Hedlund appealed the trial court's order.

## DISCUSSION

### A. *CEQA requirements.*

■ "CEQA is a comprehensive scheme designed to provide long-term protection to the environment," and must be "interpreted 'to afford the fullest possible protection to the environment within the reasonable scope of the statutory language.' " (*Mountain Lion Foundation v. Fish & Game Com.* (1997) 16 Cal.4th 105, 112 [65 Cal.Rptr.2d 580, 939 P.2d 1280].) To achieve its objective of environmental protection, CEQA and the regulatory guidelines implementing it "establish a three-tiered structure. If a project falls within a category exempt by administrative regulation [citation] or 'it can be seen with certainty that the activity in question will not have a significant effect on the environment [citation] [then] no further agency evaluation is required. If there is a possibility that the project may have a significant effect, the agency undertakes an initial threshold study [citation] [and] if that study demonstrates that the project 'will not have a significant effect,' the agency may so declare in a brief Negative Declaration. [Citation.] If the project is one 'which may have a significant effect on the environment,' an [Environmental Impact Report (EIR)] is required." (*No Oil, Inc. v. City of Los Angeles* (1974) 13 Cal.3d 68, 74 [118 Cal.Rptr. 34, 529 P.2d 66].)

■ Certain "classes of projects are 'categorically exempt' from CEQA pursuant to administrative regulation because they do not have a significant effect on the environment." (*Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at pp. 112–113; Pub. Resources Code, §§ 21080, subd. (b)(9), 21084, subd. (a).) Single-family homes are categorically exempt from CEQA. (Cal. Code Regs., tit. 14, § 15303, subd. (a).)

■ Categorical exemptions, however, are subject to important exceptions based on factors such as location, cumulative impact, or unusual circumstances. (Cal. Code Regs., tit. 14, § 15300.2.) A categorically exempt project, like a single-family residence, loses its exempt status "where the project may impact on an environmental resource of . . . critical concern where designated, precisely mapped, and officially adopted pursuant to law by federal, state, or local agencies." (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).) A CEQA exemption is also inapplicable "when the cumulative impact of successive projects of the same type in the same place, over time is significant." (Cal. Code Regs., tit. 14, § 15300.2, subd. (b).) Nor may a categorical exemption "be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Cal. Code Regs., tit. 14, § 15300.2, subd. (c).)

■ "An agency should decide whether a project is eligible for a categorical exemption as part of its preliminary review of the project" without reference to or reliance upon any proposed mitigation measures. (*Azusa, supra,* 52 Cal.App.4th at pp. 1199–1200.) " 'In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions' " listed in the regulatory guidelines. (*Fairbank v. City of Mill Valley* (1999) 75 Cal.App.4th 1243, 1259 [89 Cal.Rptr.2d 233].)

### B. *The County erred in finding the Hedlund project categorically exempt from CEQA.*

■ Single-family homes are categorically exempt from CEQA, except (1) when they "may impact on an environmental resource of . . . critical concern"; (2) "when the cumulative impact of successive projects of the same type in the same place, over time is significant"; or (3) "where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances." (Cal. Code Regs., tit. 14, § 15300.2, subds. (a)–(c).) SPAWN maintains that all of these exceptions apply here.

The County did not expressly address these regulatory exceptions but did make a general finding that the project was exempt from CEQA "because the construction of one single-family residence on a legal lot would not create adverse environmental impacts," and also found "no reasonable possibility of any significant impacts." The County's exemption finding is contrary to the evidence. The first exception to CEQA exemptions, where a project "may impact on an environmental resource of . . . critical concern" is the dispositive regulation here. (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).) It is undisputed that the project site is adjacent to a protected anadromous fish stream and within a stream conservation area. The County itself conceded in the lower court that the project is within an area of "critical concern" of its own designation. (Cal. Code Regs., tit. 14, § 15300.2, subd. (a).) The relevant issue is thus reduced to whether the project "may impact" on that environmental resource of critical concern.

Appellant Hedlund claims there is no potential for an adverse environmental impact, but the County's own findings prove otherwise. The County Board of Supervisors remarked that one constraint on development of the project site was the possible "adverse impacts on the habitat of threatened or endangered species," and also found "[p]ossible disharmonies with the

creek." Even Hedlund's own engineering consultant acknowledged, in a riparian protection plan submitted to the County, that runoff from new rooftops and driveways can erode stream banks, and proposed extensive drainage features for erosion and sediment control. The board's ultimate conclusion that the project would not result in adverse effects was expressly founded on "dozens of conditions that have been applied to enhance mitigations and reduce to a minimum the possibility of any adverse environmental impacts."

■  As the trial court properly found, the County erred in relying upon mitigation measures to grant a categorical exemption from CEQA. Only those projects having no significant effect on the environment are categorically exempt from CEQA review. (Pub. Resources Code, §§ 21080, subd. (b)(9), 21084, subd. (a).) "[A]n activity that may have a significant effect on the environment cannot be categorically exempt." (*Mountain Lion Foundation v. Fish & Game Com., supra,* 16 Cal.4th at p. 124.) If a project may have a significant effect on the environment, CEQA review must occur, and only then are mitigation measures relevant. (*Azusa, supra,* 52 Cal.App.4th at pp. 1199–1200.)

In *Azusa,* an agency authorized the continued disposal of municipal waste at a landfill and declared the project exempt from CEQA as the operation or minor alteration of an existing facility. (*Azusa, supra,* 52 Cal.App.4th at pp. 1176, 1193.) The trial court reversed the agency's determination and concluded that CEQA applied because the project would have a significant effect on the environment. (*Id.* at p. 1176.) The appellate court agreed that the significant effect exception precluded categorical exemption from CEQA. (*Id.* at pp. 1197–1201.)

In granting the categorical exemption, the agency in *Azusa* had acknowledged that pollutants were leaking from the landfill but had relied upon evidence that mitigation measures could prevent further pollution. (*Azusa, supra,* 52 Cal.App.4th at p. 1198.) The appellate court concluded that the agency's reliance on mitigation measures to grant a categorical exemption "ignored the governing issue—whether there was substantial evidence of a reasonable possibility that continued dumping would have a significant effect on the environment." (*Ibid.*) The court emphasized that " '[i]t is the *possibility* of a significant effect . . . which is at issue, not a determination of the actual effect, which would be the subject of a negative declaration or an EIR.' " (*Id.* at p. 1200, italics in original.) The court held that "proposed mitigation measures cannot be used to support a categorical exemption; they must be considered under the standards that apply to a mitigated negative declaration." (*Id.* at p. 1199.)

■ As the *Azusa* court observed, there are sound reasons for precluding reliance upon mitigation measures at the preliminary stage of determining eligibility for a categorical exemption. Regulatory guidelines dealing with the environmental review process under CEQA "contain elaborate standards—as well as significant procedural requirements—for determining whether proposed mitigation will adequately protect the environment and hence make an EIR unnecessary; in sharp contrast, the Guidelines governing preliminary review do not contain any requirements that expressly deal with the evaluation of mitigation measures." (*Azusa, supra,* 52 Cal.App.4th at p. 1200.) An agency should not be permitted to evade standards governing the preparation of a mitigated negative declaration "by evaluating proposed mitigation measures in connection with the significant effect exception to a categorical exemption." (*Id.* at p. 1201.)

■ Appellant Hedlund argues that *Azusa* does not preclude an agency from relying upon proposed mitigation measures in deciding whether a project is eligible for a categorical exemption, provided that the mitigation measures, like his riparian protection plan, are included in the initial project application. The argument is untenable. The determination of whether a project may impact a designated environmental resource must be made without reference to or reliance upon any proposed mitigation measures (*Azusa, supra,* 52 Cal.App.4th at pp. 1199–1200.) Reliance upon mitigation measures (whether included in the application or later adopted) involves an evaluative process of assessing those mitigation measures and weighing them against potential environmental impacts, and that process must be conducted under established CEQA standards and procedures for EIR's or negative declarations.

The County made a premature and unauthorized environmental evaluation at the preliminary stage of considering eligibility for a categorical exemption. The County Board of Supervisors's findings that the Hedlund project had possible "adverse impacts on the habitat of threatened or endangered species," and created "[p]ossible disharmonies with the creek" disqualified the project for a categorical exemption. The possibility of impacts on a County-designated resource of critical concern necessitates review under CEQA, at which time mitigation measures may be considered in evaluating the actual environmental impact of the project.

## DISPOSITION

The order is affirmed.

Kay, P. J., and Rivera, J., concurred.

A petition for a rehearing was denied January 18, 2005, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied March 23, 2005.