Filed 12/10/13  Certified for publication 1/3/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAVE THE PLASTIC BAG COALITION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.<br><br>    Defendants and Respondents. | A137056<br><br>(San Francisco County<br>Super. Ct. No. CPF-12-511978) |

## I.  INTRODUCTION

In 2012, the City and County of San Francisco (the City) enacted an ordinance which expanded existing restrictions on the use of "checkout bags" by retail establishments in the City (the 2012 ordinance).  Appellant Save the Plastic Bag Coalition (the Coalition), a group of plastic bag manufacturers and distributors, filed a petition for a writ of mandate seeking to invalidate the 2012 ordinance on several grounds.  The superior court denied that petition and entered judgment in favor of the respondents, the City and two of its departments.  On appeal, the Coalition contends the 2012 ordinance is invalid because (1) it does not comply with the requirements of the California Environmental Quality Act, Public Resources Code section 21000 et seq. (CEQA); and (2) it is preempted by the California Retail Food Code, Health and Safety

1

Code section 113700 et seq. (the Retail Food Code). [1] We reject these contentions and affirm the judgment.

## II. FACTUAL AND PROCEDURAL BACKGROUND

In April 2007, the City enacted San Francisco Ordinance No. 81-07, a "Plastic Bag Reduction Ordinance" which required the "use of compostable plastic, recyclable paper and/or reusable checkout bags" by large supermarkets and retail pharmacies located within the City.

In 2010, a member of the City's Board of Supervisors initiated a project to enact an ordinance which would, inter alia, extend the existing restrictions on the use of checkout bags to apply to all retailers and food establishments in the City, require stores to charge customers for checkout bags, and institute a community outreach program to encourage reusable bag use.

On November 10, 2011, the City's Planning Department issued a "Certificate of Determination of Exemption" for the project. The Planning Department determined that the proposed ordinance was a regulatory action that would protect natural resources and the environment generally and was, therefore, categorically exempt from further CEQA review under sections 15307 and 15308 of the CEQA "Guidelines." (Cal. Code Regs., tit. 14, §§ 15307 & 15308.) [2] The certificate consisted of a 12-page report in which the Department summarized the facts and evidence it considered to make this determination and set forth the following conclusions regarding the "environmental impacts" of the proposed ordinance:

"Single-use plastic bags have known environmental impacts to aesthetics, air quality and GHG emissions, hydrology and water quality, water usage, and biological

---

[1] The City concedes that the Coalition has standing to litigate the issues on appeal. (See *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 170 (*Manhattan Beach*).)

[2] Regulations pertaining to the application of CEQA are commonly referred to as Guidelines. (See *Communities for a Better Environment v. South Coast Air Quality Management Dist.* (2010) 48 Cal.4th 310, 319, fn. 4.) In this opinion, all subsequent references to "Guidelines" are to title 14 of the California Code of Regulations.

resources. The proposed project would eliminate single-use plastic bags at 'stores' within San Francisco, thereby protecting the environment from the impacts associated with single-use plastic bags. By eliminating single-use plastic bag use at more 'stores' covered by the ordinance, the proposed project would result in greater use of single-use paper bags, single-use compostable bags and reusable bags. Single-use paper bags and compostable bags have greater environmental impacts on air quality and GHG emissions and water usage than single-use plastic bags and reusable bags (or no bag at all) have lesser environmental impacts in all categories than single-use plastic bags. Studies have shown that banning single-use bags and imposing a mandatory charge on single-use bag use of paper and combustible bags results in an increase in reusable bag and no bag use and a decrease in single-use bag use. Because the proposed project would ban single-use plastic bags and impose a mandatory charge on single-use paper and compostable bags at all 'stores' in San Francisco and the proposed project would include a public education campaign aimed at promoting reusable bags, the proposed project would protect the environment and not have a significant impact on the environment."

On November 14, 2011, a draft of the proposed ordinance was presented to the City's Board of Supervisors at a public meeting where public comment was invited. Although the overwhelming majority of the speakers supported the proposal, an attorney representing the Coalition opposed it and put the City on notice that the Coalition would file a lawsuit to preclude enforcement of the proposed ordinance. Over the course of the next several weeks, the Coalition submitted hundreds of pages of "legal objections" to the proposed ordinance along with "supporting exhibits." [3] Between November 2011 and February 2012, the City Board of Supervisors conducted several public hearings and made some modifications to the draft of the proposed ordinance including eliminating a proposal to increase the amount of the 10-cent bag charge.

---

[3] The Coalition purports to incorporate these objections into its appellate brief "by reference" and urges this court "to review the Objections document." We urge the Coalition to review the pertinent rules of court regarding the appellant's obligation to provide this court with a summary of the pertinent facts.

On February 6, 2012, the Planning Department reaffirmed its prior conclusion that the proposed ordinance was categorically exempt from further environmental review. It stated: "Since the time of the Categorical Exemption Determination, the Board of Supervisors has eliminated the proposal for increasing the charge to 25 cents and has changed the operative date of the ten cent checkout bag charge to October 1, 2012. In addition, members of the public, specifically Stephen L. Joseph on behalf of [the Coalition], have submitted additional comments and material. EP [the Environmental Planning Division of the San Francisco Planning Department] has reviewed the changes to the ordinance made by the Board of Supervisors and determined that the changes do not alter the conclusions in the Categorical Exemption Determination. EP has also reviewed the additional comments and materials received from the public and determined that the materials submitted do not constitute substantial evidence indicating that an Environmental Impact Report would be required for this Ordinance. No new information has been presented to indicate that the Categorical Exemption is inappropriate or that there are any unusual circumstances associated with this proposed [ordinance]. Therefore, we have determined that the analysis set forth in the Categorical Exemption Determination is unchanged."

In February 2012, the City enacted San Francisco Ordinance No. 33-12, i.e., the 2012 ordinance. The City set forth its findings in section 2 of the ordinance:

"1. The City and County of San Francisco has adopted citywide goals of 75 percent landfill diversion by 2010 and zero waste by 2020.

"2. The broad use of single-use checkout bags and their typical disposal creates an impediment to achievement of San Francisco's landfill diversion goals.

"3. Plastic checkout bags are difficult to recycle and contaminate material that is processed through San Francisco's recycling and composing programs.

"4. Single-use checkout bags create significant litter problems in San Francisco's neighborhoods, and also litter parks, community beaches, sewer systems, and the San Francisco Bay.

4

"5.  The production and disposal of single-use checkout bags has significant environmental impacts, including the contamination of the environment, the depletion of natural resources, use of non-renewable polluting fossil fuels, and the increased clean-up and disposal costs.

"6.  Of all single-use checkout bags, plastic checkout bags have the greatest impacts on litter and marine life.

"7.  Governments in several countries have placed fees on bags, including the Republic of Ireland, which achieved a 90 percent decrease in the use of single-use plastic checkout bags due to the fee.

"8.  Studies document that banning plastic checkout bags and placing a mandatory charge on paper checkout bags will dramatically reduce the use of both types of bags and increase customers' use of reusable bags.

"9.  Reusable bags are readily available with numerous sources and vendors for these bags.  Many stores in San Francisco and through the Bay Area already offer reusable bags for sale at a price as low as 25 cents."

The 2012 ordinance amended the San Francisco Environmental Code by, inter alia, (1) extending existing restrictions regarding the provision of checkout bags to apply to all retail stores; (2) imposing a new 10-cent charge for single-use check-out bags, which could be used if they were either a compostable plastic bag or a paper bag made with a minimum of 40 percent recycled content; and (3) establishing an outreach and education program for stores and customers.  The 2012 ordinance provided that the new restrictions would become effective as to all retail stores, except retail food establishments, in October 2012, and to retail food establishments in July 2013.

On February 29, 2012, the Coalition filed a petition for a writ of mandate under CEQA and a complaint to invalidate the 2012 ordinance on the ground it was preempted by the Retail Food Code.  On June 14, 2012, the superior court denied the Coalition's motion for a preliminary injunction and stay of enforcement of the ordinance.  On August 27 and 28, 2012, the Honorable Teri L. Jackson conducted a hearing on the merits of the Coalition's petition for writ of mandate and complaint alleging preemption.  On

5

September 20, 2012, the court filed an order denying the writ petition and dismissing the preemption claim. The following week, the court denied the Coalition's motion to stay implementation of the 2012 ordinance pending appeal. Judgment was filed on November 7, 2012, and the Coalition filed a notice of appeal the following day.

## III. DISCUSSION

### A. *CEQA*

The Coalition's first claim of error on appeal is that the 2012 ordinance is invalid because the City violated CEQA by finding that the ordinance was categorically exempt from further environmental review and, therefore, could be adopted without first preparing an environmental impact report (EIR).

#### 1. *Issues Presented and Standard of Review*

CEQA embodies California's strong public policy of protecting the environment; its goals are to: "(1) Inform governmental decision makers and the public about the potential, significant environmental effects of proposed activities. [¶] (2) Identify ways that environmental damage can be avoided or significantly reduced. [¶] (3) Prevent significant, avoidable damage to the environment by requiring changes in projects through the use of alternatives or mitigation measures when the governmental agency finds the changes to be feasible. [¶] (4) Disclose to the public the reasons why a governmental agency approved the project in the manner the agency chose if significant environmental effects are involved." (Guidelines, § 15002.)

To further these goals, CEQA and its Guidelines establish a three-step process designed to assure that public agencies consider the environmental impact of their actions and decisions. (*Tomlinson v. County of Alameda* (2012) 54 Cal.4th 281, 285-286 (*Tomlinson*); *Magan v. County of Kings* (2002) 105 Cal.App.4th 468, 474 (*Magan*).) "In the first step, the public agency must determine whether the proposed development is a 'project,' that is, 'an activity which may cause either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment' undertaken, supported, or approved by a public agency. [Citation.] [¶] The second step of the process is required if the proposed activity is a 'project.' The public agency must

6

then decide whether it is exempt from compliance with CEQA under either a statutory exemption [citation] or a categorical exemption set forth in the regulations [citations]. A categorically exempt project is not subject to CEQA, and no further environmental review is required. [Citations.] If the project is not exempt, the agency must determine whether the project may have a significant effect on the environment. If the agency decides the project will not have such an effect, it must 'adopt a negative declaration to that effect.' [Citations.] Otherwise, the agency must proceed to the third step, which entails preparation of an [EIR] before approval of the project. [Citations.]" (*Tomlinson, supra,* 54 Cal.4th at p. 286.)

In the present case, there is no dispute that enacting the 2012 ordinance was a CEQA project. The issues on appeal pertain to decisions the City made during the second step of the CEQA process when it concluded that the proposed 2012 ordinance was categorically exempt from further environmental review and therefore could be approved and adopted without proceeding to step three and preparing an EIR. Specifically, the Coalition contends that (1) the City was precluded by law from relying on a categorical exemption for a project of this nature or, alternatively, (2) the 2012 ordinance falls within the "unusual circumstances" exception to the categorical exemptions upon which the City relied.

Appellate judicial review under CEQA is de novo in the sense that we review the City's actions as opposed to the trial court's decision. (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 426.) However, in reviewing an agency's compliance with CEQA, our inquiry extends " 'only to whether there was a prejudicial abuse of discretion.' [Citation.] Such an abuse is established 'if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence.' [Citations.]" (*Id.* at pp. 426-427.) Therefore, we resolve the substantive CEQA issues by independently determining whether the administrative record demonstrates any legal error by the City and whether it contains substantial evidence to support the City's factual determinations. (*Id.* at p. 427.)

7

## 2. *The City's Categorical Exemption Determination*

"The Guidelines contain 33 classes of categorical exemptions. [Citations.] Each class embodies a 'finding by the [state] Resources Agency that the project will not have a significant environmental impact.' [Citations.]" (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1381 (*San Lorenzo Valley*).) Here, the City relied on two categorical exemptions established by the CEQA Guidelines:

(1) The Class 7 or section 15307 categorical exemption which "consists of actions taken by regulatory agencies as authorized by state law or local ordinance to assure the maintenance, restoration, or enhancement of a natural resource where the regulatory process involves procedures for protection of the environment";

(2) The Class 8 or section 15308 categorical exemption which "consists of actions taken by regulatory agencies, as authorized by state or local ordinance, to assure the maintenance, restoration, enhancement, or protection of the environment where the regulatory process involves procedures for protection of the environment."

Because a categorical exemption is premised on a finding that the class of projects does not have a significant effect on the environment, " 'an agency's finding that a particular proposed project comes within one of the exempt classes necessarily includes an implied finding that the project has no significant effect on the environment. [Citation.] On review, an agency's categorical exemption determination will be affirmed if supported by substantial evidence that the project fell within the exempt category of projects.' " (*Save the Plastic Bag Coalition v. County of Marin* (2013) 218 Cal.App.4th 209, 219-220 (*County of Marin*) quoting *Davidon Homes v. City of San Jose* (1997) 54 Cal.App.4th 106, 115 (*Davidon Homes*).)

Here, however, the Coalition does not actually dispute that this record contains substantial evidence to support the City's determination that the 2012 ordinance fell within the two categorical exemptions at issue in this case. Instead, the Coalition attempts to establish that the City committed two legal errors by relying on categorical exemptions rather than preparing an EIR.

8

First, the Coalition contends that another case in which it was involved, *Manhattan Beach, supra,* 52 Cal.4th 155, precludes any city larger than the city of Manhattan Beach from relying on a categorical exemption to avoid preparing an EIR before enacting an ordinance that restricts the use of plastic bags within its jurisdiction.

*Manhattan Beach, supra*, 52 Cal.4th 155, addressed an ordinance banning the use of plastic bags at the point of sale in the city of Manhattan Beach. The city enacted the ordinance over the objection of the Coalition and without preparing an EIR after conducting an initial study which resulted in a determination that the ordinance would not have a significant negative effect on the environment. The trial court found that the Coalition had made a fair argument that the plastic bag ban would increase the use of paper bags causing negative environmental consequences and that a full CEQA review was required. Pursuant to this finding, the court issued a writ of mandate barring enforcement of the ordinance until the city prepared an EIR. (*Id*. at pp. 160-162.) However, the California Supreme Court reversed.

The *Manhattan Beach* court found, among other things, that the Coalition had *not* established a "fair argument" that the plastic bag ban would increase environmental damage. (*Manhattan Beach, supra*, 52 Cal.4th at p. 175.) The Coalition's evidence, several studies concluding that the " 'life cycle' " of paper bags had a greater environmental impact than the " 'life cycle' " of plastic bags, established that "the manufacture, transportation, recycling, and landfill disposal of paper bags entail more negative environmental consequence than do the same aspects of the plastic bag 'life cycle.' " (*Id*. at p. 172.) However, the court held: "When we consider the actual scale of the environmental impacts that might follow from increased paper bag use in Manhattan Beach, instead of comparing the global impacts of paper and plastic bags, it is plain the city acted within its discretion when it determined that its ban on plastic bags would have no significant effect on the environment." (*Ibid*.) The court also found that the city "properly concluded that a ban on plastic bags in Manhattan Beach would have only a miniscule contributive effect on the broader environmental impacts detailed in the paper bag 'life cycle' studies relied on by [the Coalition]." (*Manhattan Beach, supra*, 52

9

Cal.4th at p. 174.) In light of the relatively small size of the city's population and its retail sector, the increase in paper bag production resulting from the ordinance could "only be described as insubstantial." (*Ibid.*)

In reaching its decision, the *Manhattan Beach* court also rejected the Coalition's argument that the ordinance would have negative cumulative impacts when considered in conjunction with other similar laws enacted elsewhere in the state. (*Manhattan Beach, supra,* 52 Cal.4th at p. 174.) Questioning whether that issue was properly before it, the court nevertheless found "that Manhattan Beach is small enough that even the cumulative effects of its ordinance would be negligible." (*Ibid.*) In a footnote, the court also stated that "[w]hile cumulative impacts should not be allowed to escape review when they arise from a series of small-scale projects, that prospect does not appear in this case. According to plaintiff, the movement to ban plastic bags is a broad one, active at levels of government where an appropriately comprehensive environmental review will be required." (*Id.* at p. 174, fn. 10.)

In the present case, the Coalition's reliance on *Manhattan Beach* is perplexing. The fact that the city of Manhattan Beach was able to enact its plastic bag ban without preparing an EIR certainly does not strengthen the Coalition's position here. Furthermore, we find nothing in that opinion which supports the Coalition's specific contention that the City cannot rely on a categorical exemption in this case because it is larger than the city of Manhattan Beach. Indeed, *Manhattan Beach* was not a categorical exemption case at all; during the second step of its CEQA inquiry the city conducted an initial review which resulted in a negative declaration. (*Manhattan Beach, supra*, 52 Cal.4th at pp. 161-162.) And, although the *Manhattan Beach* court was not asked to address any CEQA categorical exemption, it nevertheless observed that an alternative available to the city during the second stage of its CEQA review was to determine that the project was categorically exempt. (*Id.* at p. 171, fn. 8.)

The Coalition literally ignores these pertinent facts and, instead, bases its argument on an isolated phrase that appears in the *Manhattan Beach* opinion. According to the Coalition, when the *Manhattan Beach* court used the term "comprehensive

environmental review" in its written decision, it made a ruling that "a comprehensive environmental review" would be required before a plastic bag ban could be adopted by any city larger than Manhattan Beach. (*Manhattan Beach, supra,* 52 Cal.4th at p. 174, fn. 10.) And, the Coalition reasons, since a comprehensive environmental review necessarily "precludes categorical exemptions," *Manhattan Beach* necessarily precludes the City of San Francisco from relying on a categorical exemption.

As reflected in our summary of *Manhattan Beach,* the court used the phrase "comprehensive environmental review" when describing (and rejecting) the Coalition's argument that the ordinance would have negative cumulative impacts. In a footnote, the court stated that "According to plaintiff, the movement to ban plastic bags is a broad one, active at levels of government where an appropriately comprehensive environmental review will be required." (*Manhattan Beach, supra,* 52 Cal.4th at p. 174 and fn. 10.) Thus, contrary to the Coalition's theory on appeal, the term "comprehensive environmental review" was not any part of the holding of *Manhattan Beach.* Indeed, in our opinion, the Coalition's strained interpretation of this quoted sentence stretches the bounds of reasonable advocacy. (*Ibid.*)

The Coalition's second argument is that the City was precluded by law from relying on the categorical exemptions in sections 15307 and 15308 of the CEQA Guidelines because those categorical exemptions apply only to "regulatory actions" and, the Coalition contends, the 2012 ordinance was a "legislative action[]." Plainly, these two categorical exemptions apply to regulatory actions. (Guidelines, §§ 15307 & 15308.) However, we reject the Coalition's unsupported assumption that a legislative body like the City cannot perform a regulatory function. The California Constitution expressly provides that: "A county or city may make and enforce within its limits all local police, sanitary, and other ordinances and regulations not in conflict with general laws." (Cal. Const., art. 11, § 7.) Thus, as the superior court found in this case, "when an ordinance, like San Francisco's Checkout Bag Ordinance, is enacted pursuant to the municipality's police powers to promote the general welfare, the municipality is acting in its regulatory capacity, within the meaning of CEQA's Class 7 and Class 8 Categorical Exemptions."

11

We find support for our conclusion in *County of Marin, supra*, 218 Cal.App.4th 209, a recently-decided case in which the Coalition made the precise argument it raises here. *County of Marin* involved a Marin County ordinance banning single-use plastic bags and imposing a fee on single-use paper bags. (*Id.* at p. 213.) The county adopted the ordinance without preparing an EIR after determining during the second step of its CEQA inquiry that the project was categorically exempt from further environmental review under Guidelines, sections 15307 and 15308, the same exemptions at issue in the present case. The superior court denied the Coalition's petition for a writ of mandate, and the *County of Marin* court affirmed. (*Id.* at p. 218.) In upholding the county's determination that the ordinance was categorically exempt from further environmental review, the *County of Marin* court rejected the Coalition's theory that only regulatory agencies can invoke those exemptions, finding, among other things that, "[a]lthough ordinances are always 'legislative' in character, they also may constitute 'regulations.' " (*Id.* at p. 227.[4])

*Magan, supra,* 105 Cal.App.4th 468, also supports our conclusion. That case involved a Kings County ordinance regulating the amount of sewage sludge that could be deposited on agricultural lands. In affirming the county's determination that the adoption of the ordinance was categorically exempt from CEQA review under Guidelines section 15308, the *Magan* court never even questioned that the ordinance was a regulatory action within the meaning of the section 15308 categorical exemption. (*Id.* at p. 477.) The Coalition discounts *Magan* because the *Magan* court did not actually consider whether the section 15308 exemption excludes the actions of a legislative body. The fact remains, however, that the ordinances in both *Magan* and *County of Marin* are both examples of a county exercising regulatory powers afforded to it by the California Constitution.[5]

---

[4] The Coalition's petition for review of the *County of Marin* decision was denied by our Supreme Court on October 2, 2013. (*Save the Plastic Bag Coalition v. County of Marin* (Oct. 2, 2013) 2013 Cal. LEXIS 8050.)

[5] At oral argument before this court, counsel for the Coalition insisted that *Magan* is not authority for the conclusion that a legislative body can invoke the section 15308

12

The Coalition contends that allowing a city or county to rely on a categorical exemption for a "green" ordinance would "make a mockery of CEQA" by transforming the exemption into a "license" to evade CEQA. We disagree. As we have already explained, an agency finding that a particular proposed project falls within a class of projects that is categorically exempt is subject to judicial review for substantial evidence. (*County of Marin, supra*, 218 Cal.App.4th at pp. 219-220; see also *Davidon Homes, supra,* 54 Cal.App.4th at p. 115.) Furthermore, as we explain next, "[e]ven if a public agency meets its initial burden to show the exemption is supported by substantial evidence, it still has to defend against claims that the exemption is subject to an exception. [Citation.] Thus, it is simply not the case that a city or county can circumvent CEQA merely by characterizing its ordinances as environmentally friendly and therefore exempt under the Class 7 or 8 categorical exemptions." (*County of Marin, supra*, 218 Cal.App.4th at p. 228.)

### 3. *The Unusual Circumstances Exception*

The Coalition contends that even if the City was not precluded by law from relying on a categorical exemption, the 2012 ordinance falls within the "unusual circumstances" exception to the categorical exemptions upon which the City relied.

The unusual circumstances exception, which is set forth in section 15300.2, subdivision (c) of the Guidelines, states that a " 'categorical exemption shall not be used for an activity where there is a reasonable possibility that the activity will have a significant effect on the environment due to unusual circumstances.' [Citations.] 'The Guidelines do not define the term "unusual circumstances." ' [Citation.] As explicated in case law, an unusual circumstance refers to 'some feature of the project that distinguishes it' from others in the exempt class. [Citation.] In other words, 'whether a

---

exemption because, according to counsel, the *Magan* court expressly refused to decide that issue. In fact, however, the *Magan* appellant raised a different issue; he argued that "the class 8 categorical exemption should not apply to the adoption of a new complex regulatory program . . . ." (See *Magan, supra,* 105 Cal.App.4th at p. 477, fn. 4.) The *Magan* court summarily rejected this claim not only because it was waived but also because it was not supported by any legal authority. (*Ibid*.)

13

circumstance is "unusual" is judged relative to the *typical* circumstances related to an otherwise typically exempt project.' [Citation.]" (*San Lorenzo Valley, supra,* 139 Cal.App.4th at p. 1381.)

"In categorical exemption cases, where the agency establishes that the project is within an exempt class, the burden shifts to the party challenging the exemption to show that the project is not exempt because it falls within one of the exceptions listed in Guidelines section 15300.2." (*Davidon Homes, supra*, 54 Cal.App.4th at p. 115; see also *County of Marin, supra*, 218 Cal.App.4th 209.) Here, as reflected in our factual summary, before the 2012 ordinance was enacted, the City Planning Department determined that the comments and materials submitted by the Coalition did not constitute substantial evidence that there were any unusual circumstances associated with the 2012 ordinance and, thus, did not alter the Department's conclusion that the project was categorically exempt.

Preliminarily, the Coalition contends that the City forfeited its "right" to challenge the Coalition's claim that the unusual circumstances exception applies to the 2012 ordinance because it failed to make findings responsive to the each of the Coalition's specific objections before it adopted the 2012 ordinance without preparing an EIR. Ironically, the Coalition waived this forfeiture claim by asserting it for the first time in its reply brief. Furthermore, the premise of this theory is undermined by the very case upon which the Coalition relies, *Davidon Homes, supra,* 54 Cal.App.4th 106.

The Coalition contends that *Davidon Homes* establishes that "if a reasonable argument is made to suggest a possibility that a project will cause a significant environmental impact, the agency must refute that claim to a *certainty* before finding that the exemption applies." (Quoting *Davidon Homes, supra*, 54 Cal.App.4th at p. 118.) As the Coalition acknowledges, this passage from *Davidon Homes* addressed the so-called "common sense" exemption, which is not a categorical exemption under the Guidelines. Under the common sense exemption, a project is exempt from CEQA if "[t]he activity is covered by the general rule that CEQA applies only to projects, which have the potential for causing a significant effect on the environment. Where it can be seen with certainty

14

that there is no possibility that the activity in question may have a significant effect on the environment, the activity is not subject to CEQA." (Guidelines, § 15061, subd. (b)(3).)

Nevertheless, the Coalition contends that the "principle" from *Davidon Homes* that we quote above also applies in a categorical exemption case. However, that quoted statement is obviously tied to the unique language of the common sense exemption. Indeed, the *Davidon Homes* court expressly focused on the substantive distinctions between the common sense exemption and other categorical exemptions established by the Guidelines when it resolved the very different issues presented by that appeal. (*Davidon Homes, supra*, 54 Cal.App.4th at pp. 115-117.) In light of those distinctions, we are concerned by the Coalition's serious mischaracterization of *Davidon Homes*. That case does not lend any support to the Coalition's forfeiture theory.

Turning to the substantive claim of error, the Coalition contends that the City abused its discretion by disregarding evidence that the Coalition produced before the 2012 ordinance was enacted which clearly established that the ordinance falls within the unusual circumstances exception to the categorical exemptions upon which the City relied.

Courts disagree about the proper standard of judicial review regarding factual determinations as to whether an otherwise exempt project falls within the unusual circumstances exception to a categorical exemption. (*Hines v. California Coastal Commission* (2010) 186 Cal.App.4th 830, 855 (*Hines*)) "'Some courts have relied on cases involving review of a negative declaration, holding that a finding of categorical exemption cannot be sustained if there is a "fair argument" based on substantial evidence that the project will have significant environmental impacts, even where the agency is presented with substantial evidence to the contrary. [Citation.] Other courts apply an ordinary substantial evidence test . . ., deferring to the express or implied findings of the local agency that has found a categorical exemption applicable. [Citations.]' [Citations.]" (*Id.* at p. 856.)

Without acknowledging this split in authority, the Coalition claims it made a "fair argument" that the unusual circumstances exception applies. In other words, without

15

disputing that substantial evidence supports the City's contrary finding, the Coalition maintains that it produced other substantial evidence to support a fair argument that the 2012 ordinance would have a significant effect on the environment due to unusual circumstances. We will assume without deciding that the fair argument standard applies.

The Coalition's "fair argument" is extremely convoluted, but appears to take two primary forms. First, the Coalition posits that the "presence of 15.9 million tourists and hundreds of thousands of commuters each day constitutes 'unusual circumstances' " precluding the City from relying on a categorical exemption. The Coalition's theory is that the 2012 ordinance will increase the use of single-use paper and compostable bags without decreasing the use of reusable bags at all because tourists and commuters will "almost never" bring their own reusable bags to the City and, even if they do, they are likely to underuse them before throwing them away which is bad for the environment.

The Coalition has failed to cite any evidence in this record to support their factual claim that tourists and commuters who visit San Francisco will undermine the positive environmental impact goals of the 2012 ordinance. Instead, they rely solely on arguments that were made by Coalition attorneys during the administrative proceedings. Thus, we summarily reject this unsupported theory.[6]

The Coalition's second argument is that "Plastic bag bans are unusual because, while they purport to protect the environment, paper and compostable bags and underused reusable bags are *worse* for the environment." In other words, the Coalition's theory is that a plastic bag ban is itself an unusual circumstance under CEQA because it targets an environmental problem by creating a worse environmental problem. As substantial proof of this theory, the Coalition relies on six studies which allegedly show that the overall "life cycle" of a paper bag has a greater negative impact on the

---

[6] When we raised this issue at oral argument, counsel for the Coalition urged us to rely on "common sense." However, as discussed more fully above, the party challenging a categorical exemption has the burden of producing substantial evidence that a project falls within an exception to that categorical exemption. (*Davidon Homes, supra*, 54 Cal.App.4th at pp. 115-117.)

16

environment than the life cycle of a plastic bag. The Coalition contends that several of these studies also support the conclusion that compostable bags and underused reusable bags are also worse for the environment than plastic bags.

The Coalition relied on essentially the same " 'life cycle' " study evidence in *Manhattan Beach*, *supra*, 52 Cal.4th at pages 162-164. As discussed earlier in this opinion, the *Manhattan Beach* court found these studies did not constitute substantial evidence supporting a fair argument that the ordinance at issue in that case would negatively impact the environment. (*Id*. at p. 173.) In reaching this conclusion, the court characterized the case before it as a "cautionary example of overreliance on generic studies of 'life cycle' impacts associated with a particular product." (*Id*. at p. 175.) As the court explained, "[s]uch studies, when properly conducted, may well be a useful guide for the decisionmaker when a project entails substantial production or consumption of the product. When, however, increased use of the product is an indirect and uncertain consequence, and especially when the scale of the project is such that the increase is plainly insignificant, the product 'life cycle' must be kept in proper perspective and not allowed to swamp the evaluation of actual impacts attributable to the project at hand." (*Ibid*.)

Despite the cautionary message in *Manhattan Beach*, the Coalition continues to rely exclusively on global impact studies regarding the life cycle of the various types of bags that exist in this world. Instead of heeding the Supreme Court's warning, the Coalition summarily distinguishes *Manhattan Beach* because it involved a smaller city than the city of San Francisco. However, we are not convinced that global impact studies are a fair or accurate mechanism for measuring the impacts of a local ordinance which is clearly tailored to address the specific environmental goals of that specific locality.

Even if these life cycle studies do have some arguable relevance when evaluating the impact of a city-wide plastic bag ban, they do not constitute substantial evidence supporting the Coalition's fair argument in this particular case because the 2012 ordinance is not a plastic bag ban, it is a Checkout Bag ordinance. Its goal is to reduce all single-use bags in San Francisco by banning single use, noncompostable plastic check-

out bags, and imposing a 10-cent bag charge when customers are provided with a single use paper or compostable plastic bag, and instituting a community outreach program to encourage reusable bag use in the City. Thus, in reaching the conclusion that this project was categorically exempt, the City reasoned that "[b]ecause the proposed project would ban single-use plastic bags and impose a mandatory charge on single-use paper and compostable bags at all 'stores' in San Francisco and the proposed project would include a public education campaign aimed at promoting reusable bags, the proposed project would protect the environment and not have a significant impact on the environment."

The Coalition argues that the 10-cent fee for providing a compostable or paper bag may not be taken into account in determining whether the categorical exemptions apply. According to the Coalition, that fee is a "mitigation" measure the potential effectiveness of which can only be evaluated as part of a comprehensive environmental review. We disagree.

CEQA Guidelines define a " 'project' " as including "the whole of an action which has a potential for resulting in either a direct physical change in the environment, or a reasonably foreseeable indirect physical change in the environment . . . ." (Guidelines, § 15378, subd. (a).) A mitigation measure, by contrast, involves "feasible changes in any or all activities involved in the project in order to substantially lessen or avoid significant impacts on the environment . . . ." (*Id*., § 15041, subd. (a).) Here, as our factual summary illustrates, the 10-cent fee was always an integral part of the 2012 ordinance. It was not a mitigation measure in any sense of that word.

*Wollmer v. City of Berkeley* (2011) 193 Cal.App.4th 1329 (*Wollmer*), supports our conclusion. In that case, the trial court denied a petition for a writ of mandate to block an affordable housing development in Berkeley. (*Id*. at p. 1338.) The *Wollmer* court affirmed that decision and upheld the city's determination that the project was categorically exempt under CEQA Guidelines section 15332. (*Id*. at pp. 1347-1354.) One aspect of that project, which was an integral part from its inception, was that its developers "would dedicate land for a left turn lane on Ashby Avenue, thereby reducing traffic impacts to less than significant, a necessary condition for the [CEQA] exemption."

(*Id.* at p. 1352.)  The *Wollmer* court rejected appellant's contention that this aspect of the project was a "mitigation measure," finding instead that the dedication of a five-foot right-of-way was "a component of the project that assisted the City with an existing traffic issue."  (*Ibid.*)  The court reasoned that the traffic problem preexisted the proposed project and the dedication that improved that problem "became part of the project design—it was never a *proposed* mitigation measure."  (*Id.* at p. 1353.)[7]  Just so here: the 10-cent per bag fee aspect of the ordinance was, from the inception, "part of the project design" which directly addressed the problem of single use bags, a problem that preexisted the proposed project.  It was not a "mitigation measure" to try to alleviate some perceived difficulties in the original plan.

The Coalition mistakenly relies on *Salmon Protection and Watershed Network v. County of Marin* (2004) 125 Cal.App.4th 1098 (*Salmon Protection*) and *Azusa Land Reclamation Co., Inc. v. Main San Gabriel Basin Watermaster* (1997) 52 Cal.App.4th 1165 (*Azusa*).  Those cases involved proposed subsequent actions by the project's proponent to mitigate or offset the alleged adverse environmental impacts.  (See *Salmon Protection, supra*, 125 Cal.App.4th at pp. 1104 & 1108 and *Azusa, supra*, 52 Cal.App.4th at pp. 1187-1188 & 1199-1200.)  Nothing of that sort was involved in the 10-cent charge provision of the 2012 ordinance.  That fee was, from the very beginning, an integral part of the overall project designed to help the San Francisco environment, i.e., it was clearly a significant part of the ordinance from its inception.

---

[7]  After ignoring *Wollmer* in its opening brief to us, the Coalition spends several pages in its reply brief trying to distinguish that case.  It purports to do so by quoting many paragraphs from the *Wollmer* decision and then stating:  "The dedication offer [in *Wollmer*] was part of the project design only in the sense that is was part of the ***preexisting reality***, not a ***proposed*** mitigation measure. . . . [¶] In this case, the 10-cent fee was not a ***preexisting reality***.  It was a ***proposed*** mitigation measure to reduce the impacts of this project."  Our response to this argument can be reduced to a simple statement, and minus any bolding, underlining, or italics:  as the *Wollmer* decision makes clear, the issue is whether the challenged portion of the plan was or was not part of the original project.  The 10-cent charge clearly was in this case; it was not a subsequently-created mitigation measure.

19

In summary, the Coalition has failed to establish that the City erred by concluding that the 2012 ordinance was categorically exempt; it has not proven its legal theories that the City was precluded from relying on a categorical exemption, nor has it squarely addressed or even fairly acknowledged the substantial evidence supporting the City's determinations in this case. Finally, the Coalition failed to carry its burden of establishing that the unusual circumstances exception to the CEQA categorical exemptions apply to the 2012 ordinance. For all these reasons, we affirm the judgment denying the Coalition's petition for a writ of mandate.

**B.** *Preemption*

The Coalition's second claim on appeal is that the 2012 ordinance is invalid because it is preempted by the Retail Food Code. (Health & Saf. Code, § 113703 et seq.)[8]

**1.** *Issues Presented and Standard of Review*

" 'Local ordinances and regulations are subordinate to state law. [Citation.] Insofar as a local regulation conflicts with state law, it is preempted and invalid. [Citations.] " ' " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' [Citations.]" ' [Citations.]" (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 188 (*California Grocers*); see also *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1150 (*Big Creek Lumber*).)

In the present case, the Coalition does not contend that the 2012 ordinance duplicates or contradicts any other law. Instead, the Coalition maintains that the Retail Food Code expressly and fully occupies the field of law that the 2012 ordinance purports to regulate. "Express field preemption turns on a comparative statutory analysis: What field of exclusivity does the state preemption clause define, what subject matter does the

_____

[8] Undesignated statutory references in this section of our opinion are to the Health and Safety Code.

local ordinance regulate, and do the two overlap? [Citations.]" (*California Grocers, supra*, 52 Cal.4th at pp. 188-189.)

"The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption. [Citation.]" (*Big Creek Lumber, supra,* 38 Cal.4th at pp. 1149.) Court are "'reluctant to infer legislative intent to preempt a field covered by municipal regulation when there is a significant local interest to be served that may differ from one locality to another.' [Citations.]" (*Ibid*.) Thus, "if there is a significant local interest to be served which may differ from one locality to another then the presumption favors the validity of the local ordinance against an attack of state preemption.' [Citations.]" (*Ibid*.; see also *City of Riverside v. Inland Empire Patients Heath and Wellness Center, Inc*. (2013) 56 Cal.4th 729, 744.)

## 2. *Analysis*

As noted above, the first step in our express field preemption inquiry is to identify the field of exclusivity established by the state preemption clause. (*California Grocers*, *supra*, 52 Cal.4th at p. 189.)

The purpose of the Retail Food Code "is to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented through adoption of science-based standards." (§ 113703.) To that end, the Code contains the following express preemption clause: "Except as provided in Section 113709, it is the intent of the Legislature to occupy the whole field of health and sanitation standards for retail food facilities, and the standards set forth in this part and regulations adopted pursuant to this part shall be exclusive of all local health and sanitation standards relating to retail food facilities." (§ 113705.)

The field reserved for state regulation by this preemption provision is "clear and precise." (*California Grocers, supra*, 52 Cal.4th at p. 189.) It establishes that the "state alone may adopt 'health and sanitation standards for retail food facilities.' " (*Ibid*.) In other words, the Retail Food Code preempts local ordinances which impose "substantive food safety standards." (*Ibid*.) However, the "Retail Food Code does not preempt all laws that have as their purpose the promotion of food health and safety; it preempts only

21

those that establish 'health and sanitation standards' for retail food establishments, so as to ensure uniformity for such facilities. [Citation.]" (*Id.* at p. 191.)

The 2012 ordinance does not establish health or sanitation standards for retail food establishments. Instead, it regulates the use of single-use checkout bags in its jurisdiction by (1) precluding stores from providing single-use noncompostable plastic bags; (2) requiring a fee for the provision of any other type of single-use bag; and (3) establishing a community outreach program to encourage reusable bags. The fact that these restrictions apply to all retail stores in the City and thus include retail food facilities does not alter their fundamental nature: the 2012 ordinance regulates single use checkout bags, not food safety. Thus, we conclude that the 2012 ordinance is not preempted by the Retail Food Code.

The Coalition insists that the preemption clause in the Retail Food Code establishes that the Legislature intended to "occupy the entire field." (§ 113705.) However, the Coalition fails to acknowledge that a field, even an entire field, has some ending point. Furthermore, the Coalition also overlooks other provisions of the Retail Food Code which make clear that it was not intended to preempt local regulation of every subject addressed anywhere in this statute. For example, section 113709 provides that it does not "prohibit a local governing body from adopting an evaluation and grading system for food facilities" or otherwise specifically regulating some of their sanitary standards, and section 113715 mandates that any "operation of a food facility shall . . . be in accordance with all applicable local . . . ordinances, including but not limited to, fire, building, and zoning codes."

The Coalition also argues that the 2012 ordinance is preempted because a carryout bag is a "single-use article[]" which is regulated by the Retail Food Code. "Single use articles" is a broadly defined term under the Code, which includes but is not limited to "utensils, tableware, carry-out utensils, bulk food containers, and other items such as bags, containers, placemats, stirrers, straws, toothpicks, and wrappers that are designed and constructed for one time, one person use, after which they are intended for discard." (§ 113914.) The Code provides that "single-use articles shall not be reused" (§ 114081,

22

subd. (d)) and that "[m]aterials that are used to make single-use articles shall not allow the migration of deleterious substances or impart colors, odors, or tastes to food, and shall be safe and clean." (§ 114130.2.)

The fact that discreet provisions of the Retail Food Code also address carryout bags does not alter our conclusions. Outside the express field of exclusivity, "it is well-settled that the preemption doctrine does not preclude a city from exercising its police power on a subject simply because the Legislature has also enacted a law on the same subject." (*Harrahill v. City of Monrovia* (2002) 104 Cal.App.4th 761, 767.) Here, the perceived "overlap" between the Retail Food Code and the 2012 ordinance does not pertain to the field of exclusivity established by the preemption clause.

As the superior explained in its order dismissing the Coalition's preemption claim, "as it pertains to single-use articles, therefore, the [Retail Food Code] occupies the field of safety and sanitation standards for such articles. The [Retail Food Code] does not occupy the field of environmental standard[s] for single use bags. Further, San Francisco's checkout bag ordinance does not establish or affect 'health and sanitation standards' (or regulate food safety). It does not address or even mention food contamination, purity, cleanliness, spoilage or any topic connected to the express field of the [Retail Food Code.]"

For all of these reasons, we conclude that the 2012 ordinance is not preempted by the Retail Food Code.

## IV. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Haerle, J.

We concur:

_____

Kline, P.J

_____

Richman, J.

23

Filed 1/3/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAVE THE PLASTIC BAG COALITION,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.<br><br>    Defendants and Respondents. | A137056<br><br>(San Francisco County<br>Super. Ct. No. CPF-12-511978) |

BY THE COURT:

    The opinion in the above-entitled matter filed on December 10, 2013, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is now so ordered.

Dated: _____                _____
                                                     Kline, P.J.

Trial Court:  Superior Court of San Francisco County


Trial Judge:  Hon. Teri Jackson


Attorney for Plaintiff and Appellant
Save the Plastic Bag Coalition                    Stephen Laurence Joseph

Attorney for Defendant and Respondent
City and County of San Francisco                  Dennis J. Herrera
                                                  City Attorney
                                                  Wayne K. Snodgrass
                                                  James M. Emery
                                                  Deputy City Attorneys